Deane R. SCHAEFER

v.

The UNITED STATES.

No. 525–78.

United States Court of Claims.

July 16, 1980.

David L. Evans, Bismark, N. D., atty. of record, for plaintiff; Fraase, Evans & Fraase, David L. Peterson, and Wheeler, Wolf, Wefald & Peterson, P. C., Bismark, N. D., of counsel.

Thomas W. Trigg, Washington, D. C., with whom was Asst. Atty. Gen. Alice Daniel, Washington, D. C., for defendant; Sheila Berman and William Olivier, of counsel.

Before NICHOLS, KASHIWA and SMITH, Judges.

ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

KASHIWA, Judge:

In this action plaintiff, by seeking back pay, accrued benefits and reinstatement, challenges the correctness of his removal as an employee of the United States Department of Labor (Labor). Plaintiff claims both Labor's decision to remove him and the Civil Service Commission's affirmance are invalid, null and void and that he therefore should never have been removed from his position. The parties are presently before the court on cross motions for summary judgment. Defendant asks us to hold plaintiff entitled to no recovery. In support thereof, defendant asks us to hold the action of Labor to be correct and the affirmance by the Civil Service Commission [1] entitled to finality. Plaintiff asks us to find just the opposite. The case was submitted without oral argument on the briefs filed by the parties. There being no genuine issue as to any material fact, for the reasons set out below, we grant defendant's motion and deny plaintiff's motion. Granting defendant's motion also being dispositive of this action, we also dismiss plaintiff's petition in its entirety.

Plaintiff, a preference eligible veteran, was employed by Labor as an inspector in the Occupational Safety and Health Administration (OSHA). His official designation was Compliance Safety and Health Officer.

---

[1]. Effective January 1, 1979, the Civil Service Commission was reorganized into the Merit Systems Protection Board and the Office of Personnel Management. Since all actions complained of in the petition occurred prior to January 1, 1979, the reviewing agency will be referred to throughout as the Civil Service Commission.

On July 29, 1977, plaintiff's immediate supervisor, Jerome J. Williams, Area Director of the Bismark Area Office of OSHA, provided plaintiff with written notice of a proposal by Labor to remove plaintiff from his position in no less than 30 days. The letter listed five reasons for the proposed adverse action[2] and fully explained the charges against plaintiff. The letter also informed plaintiff of his right to review the evidence on which the proposed action was based and to respond to the charges either orally or in writing. In response to this notice, on August 1, 1977, plaintiff submitted a written reply to Curtis A. Foster, Regional Administrator, Denver Region, OSHA. He subsequently supplemented his written response with an oral presentation to Foster. On August 24, 1977, Foster notified plaintiff that after carefully reviewing the entire case, and having given full consideration to plaintiff's written and oral presentations, he had concluded the evidence sustained at least two of the specifications substantiating each reason (a total of 19 specifications were sustained) and this was sufficient to establish all five reasons. He also decided this warranted plaintiff's removal under 5 U.S.C. § 7512 (1976)[3] to promote the efficiency of Labor. Foster notified plaintiff his removal would be effective at 8:00 a. m., August 29, 1977, and explained plaintiff's appeal rights. Plaintiff was, in fact, removed from his position at that time.

On September 21, 1977, plaintiff, by counsel, appealed his dismissal to the Federal Employee Appeals Authority (Appeals Authority) of the Civil Service Commission, requesting the matter be resolved without a hearing. The Appeals Authority notified OSHA of plaintiff's appeal and requested pertinent information to aid it in reaching a decision. Labor submitted documentation on October 27, 1977, and October 28, 1977. On December 12, 1977, the Appeals Authority provided plaintiff with a copy of the materials submitted by Labor and notified him of his right to present his case at a hearing. Plaintiff, through counsel, made a deliberate choice to waive his right to a hearing and on January 6, 1978, furnished an extensive written response in lieu thereof.

In a decision dated April 20, 1978, the Appeals Authority held that, based on the evidence before it, Labor had proven by a preponderance of the evidence specifications D, E, F, G and H underlying reason 1, specifications A, B, D, F, and G underlying reason 2, specifications A and B underlying reason 3 and specifications B and D underlying reason 5. None of the specifications underlying reason 4 were so proven. It accordingly concluded the validity of reasons 1, 2, 3 and 5 was established by a preponderance of the evidence. The Appeals Authority also decided Labor had complied with the required procedures in effecting plaintiff's removal and that "[b]ecause of the seriousness of the sustained charges, * * * appellant's removal from the Federal Service was taken for such cause as will promote the efficiency of the service." The Appeals Authority therefore affirmed Labor's removal of plaintiff

**2.** Each of the five reasons consisted of a different type of employee misconduct. The five reasons were: (1) failure to report violation of OSHA standards, (2) failure to properly conduct inspections and/or follow-up inspections in violation of OSHA regulations, (3) falsification of travel vouchers and excessive claims for reimbursement, (4) purchasing at Government expense supplies for personal use, and (5) solicitation and/or acceptance of gratuities, arrangements or offerings.

**3.** 5 U.S.C. § 7512 provides in relevant part as follows:

"§ 7512. *Cause; procedure; exception*
"(a) An agency may take adverse action against a preference eligible employee, or debar him for future appointment, only for such cause as will promote the efficiency of the service.

"(b) A preference eligible employee against whom adverse action is proposed is entitled to—

"(1) at least 30 days' advance written notice, except when there is reasonable cause to believe him guilty of a crime for which a sentence of imprisonment can be imposed, stating any and all reasons, specifically and in detail, for the proposed action;

"(2) a reasonable time for answering the notice personally and in writing and for furnishing affidavits in support of the answer; and

"(3) a notice of an adverse decision."

under 5 U.S.C. § 7512. Plaintiff then brought suit in this court.

In contending his removal was null and void, plaintiff attacks both the correctness of the removal action by Labor as well as insisting we attach no finality to the affirmance of such action by the Appeals Authority. Specifically, plaintiff insists that prior to dismissing him Labor (1) failed to notify him of any proposal to rate his work "unsatisfactory," and (2) failed to, in fact, so rate him. Plaintiff also feels its dismissal of him was procedurally incorrect due to the existence of a "conspiracy" among his fellow employees and superiors to make a mockery of the safeguards afforded him by 5 U.S.C. § 7512(b). With respect to the Appeals Authority's affirmance, plaintiff argues its action was arbitrary, capricious, an abuse of discretion and unsupported by substantial evidence in the record before it. We discuss these points in turn.

■ Defendant admits that prior to his separation plaintiff did not receive notice of a proposal to rate his work "unsatisfactory" nor was his work so rated. This, however, in no way affects the correctness of Labor's action. Plaintiff was separated from his employment with OSHA under the provisions of the Veterans' Preference Act, 5 U.S.C. § 7512. This statute sets out the three procedural requirements which must all be met prior to effecting a separation. The requirement which plaintiff insists was not met is not found in this statutory provision. The need for notice, and actual rating of "unsatisfactory," is in fact a precondition to removal under the Performance Rating Act, 5 U.S.C. §§ 4301 et seq. (1976); specifically, 5 U.S.C. § 4304(b). In insisting Labor's action was incorrect because of its failure to first rate his work "unsatisfac-

tory," plaintiff is therefore contending that to effect a separation under 5 U.S.C. § 7512, Labor must also comply with the requirements for removal under the Performance Rating Act. This is an entirely erroneous view. The Performance Rating Act and the Veterans' Preference Act provide two alternative and mutually independent means of firing an employee. The procedures for removal under the Performance Rating Act are entirely separate from those of the Veterans' Preference Act, the requirements of the former act being not at all relevant in a removal proceeding conducted under the latter. *Armstrong v. United States*, 186 Ct.Cl. 539, 544–545, 405 F.2d 1275, 1278–1279 (1969), *cert. denied*, 395 U.S. 934, 89 S.Ct. 1997, 23 L.Ed.2d 449 (1969); *Angrisani v. United States*, 172 Ct.Cl. 439, 442–443 (1965). For this reason, we have repeatedly rejected plaintiffs' legal assertions that an unsatisfactory rating is a prerequisite for dismissal under 5 U.S.C. § 7512. *E. g., Armstrong v. United States*, 186 Ct.Cl. at 545, 405 F.2d at 1279. There was, therefore, no reason for Labor to give plaintiff notice of "unsatisfactory" work and to actually rate it as such. Labor's failure to do so, therefore, does not affect the correctness of its action. As above mentioned, the only requirements which had to be met are the three set out in 5 U.S.C. § 7512. We feel Labor did comply with these requirements.[4] While agreeing with this, plaintiff insists that by virtue of a "conspiracy" against him, such compliance was a meaningless gesture.

■ It is a well–established rule that Government officials are presumed to act in good faith in the performance of their duties. *E. g., Kalvar Corp. v. United States*, 211 Ct.Cl. 192, 198, 543 F.2d 1298, 1301–1302 (1976), *cert. denied*, 434 U.S. 830, 98 S.Ct. 112, 54 L.Ed.2d 89 (1977). "The

---

4. First, Labor notified plaintiff on July 29, 1977, of its proposed removal action; it did not actually remove plaintiff until August 29, 1977. This thus met the 30–day requirement of 5 U.S.C. § 7512(b)(1). Second, Labor allowed plaintiff 15 calendar days from his receipt of the letter to respond to the reasons and specifications it contained. Plaintiff submitted a lengthy written response to Curtis A. Foster,

Regional Administrator of OSHA, on August 1, 1977; and two days later, he and his wife orally presented justifications to Foster. Plaintiff's extensive responses evidence the reasonableness of the 15–day reply period allowed by the agency. This met 5 U.S.C. § 7512(b)(2). Finally, Foster sent plaintiff the notice of an adverse decision required under 5 U.S.C. § 7512(b)(3).

court has always been 'loath to find to the contrary,' and it requires 'well–nigh irrefragable proof' to induce the court to abandon the presumption of good faith dealing." *Kalvar Corp. v. United States, id.* By insisting his co–workers and superiors conspired, plaintiff is really alleging they acted in bad faith in the performance of their duties. We could, therefore, find for plaintiff only if he overcomes the presumption of good faith dealings. This plaintiff has failed to do. Plaintiff makes reference to a meeting attended by one of his superiors and some co–workers, plaintiff himself not being present. He would have us characterize this as "[a] secret meeting  *  *  * held to play out a previously written script  *  *  *." We do not so view this meeting. While plaintiff was not present, the purpose of the gathering was to allow the people present to air their objections to plaintiff's performance. There is no suggestion of these persons acting pursuant to some prepared script. Plaintiff also alleges he was "set up by a programmed and calculated plan to secure his involuntary release from his job." We find no evidence to this effect. Plaintiff also insists that although the written notice of proposed removal was signed by Jerome J. Williams, the removal decision was initiated by Curtis A. Foster, the official who, on behalf of Labor, made the decision to remove plaintiff. Plaintiff, accordingly insists Foster, in deciding whether the charges justified removal, was biased against plaintiff, making his rights under 5 U.S.C. § 7512(b)(2) meaningless. The short answer is that it is one thing to make a bare allegation of bias and something else entirely to produce evidence in support thereof. Plaintiff has no evidence. Even assuming Foster did initiate the charges, his occupying the role of both investigator and adjudicator is not itself adequate to establish bias. *See Martin–Trigona v. Underwood,* 529 F.2d 33, 37 (7th Cir. 1975). These illustrative examples, and others which we feel not necessary to discuss, do not in our minds approach the "well–nigh irrefragable proof" needed. We therefore hold there was no conspiracy. There being no merit to any of plaintiff's

challenges to the removal action by Labor, and we on our own finding nothing objectionable, we hold such action to be entirely correct.

Plaintiff's belief that the Appeals Authority action was arbitrary, capricious and an abuse of discretion rests upon his assertion that the Appeals Authority (1) prior to rendering its April 20, 1978, decision failed to give due consideration to evidence he submitted to it and (2) in reaching its decision held admissible hearsay evidence introduced by Labor. His contention that its decision was not supported by substantial evidence rests primarily upon the Appeals Authority's basing its affirmance on such hearsay evidence. Plaintiff would have us hold hearsay evidence can never amount to the "substantial evidence" needed to sustain agency removal of an employee.

The short answer to this first objection is that the Appeals Authority did give due consideration to the evidence plaintiff submitted to it. It, however, simply chose to attach greater weight to the evidence submitted by Labor. Before considering the objections arising out of the Appeals Authority's admission of, and reliance on, hearsay evidence, it is necessary to in some detail set out the reasons and specifications asserted against plaintiff and the evidence before the Appeals Authority. We do so only to the extent necessary to show why its decision is entitled to finality.

Plaintiff claimed in his official OSHA reports that on October 27, 1976, he conducted a follow–up inspection at the American Crystal Sugar Company (Crystal Sugar). OSHA, taking the position that plaintiff in fact failed to conduct a proper inspection, listed this alleged inspection as specification B under reason 2 (failure to properly conduct inspections and/or follow–up inspections in violation of OSHA regulations). The administrative record forwarded by Labor to the Appeals Authority contained, among other evidence, the statement of James Hensley, one of plaintiff's co–workers. Hensley had signed and dated the last page of his statement and had initialed all the other pages. In addition,

while not under oath, his signing was witnessed by another individual, who also signed the last page. Hensley accompanied plaintiff on the visit to Crystal Sugar. His account of the visit is as follows:

I was told to be ready to go on an inspection trip with Mr. Schaefer on or about the 27th of October 1976. During this trip we stopped at the American Crystal Sugar Company at Drayton, North Dakota, for the purpose of eating lunch at the plant restaurant. No inspection at all was planned for this facility. After lunch, as we were leaving, we saw a Mr. Fischer, one of the plant officials. I was introduced as a new OSHA member who had never seen a sugar beet plant and Mr. Schaefer asked if it was OK if he showed me around. Mr. Fischer readily agreed and asked one of the foremen to accompany us. At no time did we take inspection notes nor make any effort to contact either of the union officials. As we were leaving we passed Mr. Fischer's office and when he asked about the results of our inspection, Mr. Schaefer replied, "What inspection? I wasn't even here today!" Later he did write this up as an official inspection.

\* \* \* \* \* \*

We continued our trip and just before arriving in Bismarck, Mr. Schaefer started asking of me the question, what are we going to tell Jack [plaintiff's supervisor]? I told him I did not know what he was talking about and he said that since we had not done much on the trip Jack would be mad at us. Finally, he said he would write up the American Crystal Sugar Company \* \* \* as [an] inspection[ ] and this would make it look as though we had done more on the trip. \* \* \*

On January 10, 1977, plaintiff inspected the American Linen and Supply Company (American Linen) for the purpose of checking out an employee's complaint of possible inadequate oxygen and excessive carbon monoxide. OSHA believed this inspection was also improperly conducted and listed it as specification D of reason 2. Hensley accompanied plaintiff on this trip and brought along a carbon monoxide analyzer as well as a Bendix pump and carbon monoxide tubes--devices to be used to test for insufficient oxygen and excessive carbon monoxide. Hensley's previously referred to statement also detailed the events surrounding this inspection as follows:

\* \* \* We arrived [at American Linen] on one of the coldest days of the winter. I told Mr. Schaefer that I should take the carbon monoxide analyzer inside because the cell would freeze and render the instrument worthless until it could be thoroughly warmed up again. He told me to leave it in the car, that it might upset management. \* \* \* We started the inspection and by the time I was permitted by Mr. Schaefer to bring the carbon monoxide analyzer in, the cell was frozen solid and the machine was rendered worthless for its designed purpose. I asked Mr. Schaefer if I could go to the car and bring in the Bendix pump and carbon monoxide tubes[;] he told he no, that if management saw it they would ask what it was for and when I mentioned carbon monoxide they would get all upset with us. Therefore, no carbon monoxide tests at all were conducted by us, but Mr. Schaefer made the official report look as though we had performed such test[s] and had found the atmosphere to be free of carbon monoxide.

In addition, Hensley's statement indicated that even though two union stewards were present at American Linen, plaintiff made no effort to contact the stewards and conducted his inspection tour without having either one accompany him.

On September 9, 1976, plaintiff, accompanied by Eric Ramirez, went to Fargo, North Dakota, to conduct a follow-up inspection of an addition being constructed onto the Econ-O-Tel Motel. The construction project was being carried out by Twin City Construction Company (Twin City). Feeling this inspection to also be improperly conducted, OSHA cited it as specification G of reason 2. Like Hensley, Ramirez had also signed a statement detailing his deal-

ings with plaintiff. His signature was witnessed by another person who also signed the statement. Ramirez' account of this inspection is as follows:

> * * * [O]n October 9, 1976, we went to Fargo to do some follow–ups and general inspections. We checked into the Econ–O–Tel about 3:00 or 3:30 PM. The motel was having an addition constructed by Twin City Construction Company. Mr. Schaefer let me know that he had previously inspected this site and was planning on doing a follow–up. * * * When we reached the Econ–O–Tel, I asked, "Are we ready to do the follow–up?" He said, "No, we're going to check in first." We had enough time to do a follow–up based on the amount of paper work there was on the previous citation, but he said we should check in first. We went ahead and checked in, then went to our respective rooms where Deane said he had some paper work to do. So I figured that the follow–up would be performed the first thing next morning. But at approximately 5:30 PM, Mr. Schaefer came by and said it was time to do the follow–up. * * * Mr. Schaefer said we didn't need any hard hats, or anything else, since the employees and employer representatives had left the site for the day. * * * We walked around and Mr. Schaefer took pictures of the items that were supposed to be abated. Mr. Schaefer did not make contact with anyone on the site. There was no opening or closing conference and yet it was written up as a follow–up inspection. I raised a question about performing a follow–up in this manner and he said something about it either being contested or might be contested, and that if there was going to be a contestment, that he didn't want to talk to anybody and stir up any more trouble and open up a new "can of worms."

On October 27, 1976, plaintiff accompanied by Hensley traveled to Pembina, North Dakota, on business. Plaintiff remained there 2¾ days. Upon his return to Bismarck, he submitted a travel voucher claiming reimbursement for 2¾ days, based on average lodging of $11 per day at a motel in Halleck, Minnesota. OSHA determined that plaintiff had in fact stayed with relatives, not at a motel, and therefore had not incurred any expense for lodging. Plaintiff's action gave rise to specification B of reason 3 (falsification of travel vouchers and excessive claims for reimbursement).

Plaintiff's own signed affidavit submitted to the Appeals Authority disclosed that he had stayed with relatives in Halleck and not at a motel. In addition, the signed and witnessed statements of three of plaintiff's co-workers disclosed that on a number of occasions plaintiff counseled them to deliberately inflate their own travel vouchers. He once advised Ramirez to stay in the cheapest motels and then in claiming reimbursement raise the room rate to just below the maximum reimbursement allowed. Per Ramirez' statement, plaintiff's rationale was: "This way if one of us hangs, we all hang together." Ray Stokes' statement indicates plaintiff told Stokes and another employee to inflate their room expense on their travel vouchers. Stokes also states that:

> On several occasions, Mr. Schaefer has called me at the office and asked if Mr. Jack Williams (Area Director) was in and what was going on, saying that he had just returned home from several days on the road. This would be around 2:00 PM. He would then say not to mention his call and that he would be in the next morning. His object was to charge excessive per diem and motel costs, which he did and bragged to me about.

Finally, with regard to the Pembina trip which gave rise to this specification, Hensley's statement indicates plaintiff advised Hensley to deliberately inflate his own motel costs in filling out his reimbursement voucher.

Sometime prior to November 17, 1976, plaintiff inspected the Super Valu Warehouse (Super Valu). On November 17, 1976, Hensley accompanied plaintiff to Super Valu, where plaintiff purchased four cases of fruit juice. OSHA subsequently determined such purchase to be at a below retail price. The purchase gave rise to

specification B under reason 5 (solicitation and/or acceptance of gratuities, arrangements or offerings). The portion of Hensley's statement dealing with the November 17, 1976, visit is as follows:

> \* \* \* Our first stop [in Fargo] was at the Super Valu warehouse. Mr. Schaefer told me that we were not there to inspect so I should wait in the car. He said he had inspected there about a year earlier and ever since then he always stopped for a visit whenever he was in Fargo. He came out approximately 45 minutes later with about four cases of orange and grapefruit juice. *He told me that ever since he had inspected there he could get items by the case at the same price grocery stores paid for them.* \* \* [Emphasis supplied.]

In his own affidavit, plaintiff admitted he made this purchase.

■ The Appeals Authority sustained all of the above specifications. Since it held no hearing, all the evidence before it, both that submitted by Labor and plaintiff, consisted of documents. To the extent the truth of the matter asserted therein was relevant to the Appeals Authority's action, these documents technically were hearsay. We, however, cannot agree with plaintiff's contention that the Appeals Authority's admission of hearsay evidence made its decision arbitrary, capricious and an abuse of discretion. It is well established that in deciding whether to affirm an agency's separation of an employee, hearsay evidence is admissible before the Civil Service Commission. *E. g., West v. United States,* 207 Ct.Cl. 513 (1975); *Verrault v. United States,* 578 F.2d 1389, 216 Ct.Cl. 386 (1978). The only precondition

we impose is that such evidence be "sufficiently convincing to a reasonable mind and \* \* \* reveals sufficient assurance of its truthfulness." *Pascal v. United States,* 211 Ct.Cl. 183, 191, 543 F.2d 1284, 1289 (1976). Based upon examination of the record before the Appeals Authority, we feel the statements of Hensley, Ramirez and Stokes did all meet this requirement.[5] These statements though hearsay were therefore properly admissible before the Appeals Authority. Their admission thus did not in any way make its decision arbitrary, capricious or an abuse of discretion. We now turn to plaintiff's contention that hearsay evidence cannot be "substantial evidence."

■ In reviewing administrative decisions, hearsay evidence can, in appropriate cases, amount to substantial evidence. *Verrault v. United States, supra; Wathen v. United States,* 208 Ct.Cl. 342, 527 F.2d 1191 (1975), *cert. denied,* 429 U.S. 821, 97 S.Ct. 69, 50 L.Ed.2d 82 (1976); *West v. United States, supra; McKee v. United States,* 205 Ct.Cl. 303, 500 F.2d 525 (1974). Once held admissible, such evidence is under no special disadvantage because of its hearsay character. In deciding whether particular hearsay evidence amounts to substantial evidence, we apply the same standard applied to all other evidence properly before an administrative agency. In any particular case, hearsay evidence can therefore be "substantial evidence" if it has sufficient probative force such that a reasonable man might accept it as adequate to support the conclusion reached by the agency.[6] In seeing whether particular hearsay evidence is sufficiently probative, such hearsay evidence is

---

5. We note in this regard that these individuals all signed the respective statements attributed to them and another person witnessed their doing so and signed the statement also. This indicates to us that these three persons were in fact the authors of the statements ascribed to them. Additionally, we perceive no reason why Hensley, Ramirez or Stokes would lie with respect to their encounters with plaintiff, nor has plaintiff brought anything concrete to our attention in this regard.

6. Though we have stated this requirement slightly differently in a number of cases, this

thread of continuity runs throughout. In *West v. United States,* we expressed the standard in the following way: "It is well settled that hearsay \* \* \* can constitute substantial evidence if it has sufficient probative force." 207 Ct.Cl. at 515. *McKee v. United States* phrased it in terms of hearsay constituting substantial evidence "if sufficiently convincing to a reasonable mind." 205 Ct.Cl. at 310, 500 F.2d at 528. Most recently we said hearsay can be substantial evidence "if the circumstances are such as to lend it credence." *Verrault v. United States, supra.*

to be evaluated relative to all the other evidence, including other hearsay, properly before the administrative agency. *McKee v. United States, supra; Reil v. United States*, 197 Ct.Cl. 542, 456 F.2d 777 (1972). This need for such evaluation necessarily means there exists no hard and fast rule as to when hearsay constitutes substantial evidence. Rather, this determination must be made on a case by case basis. *Jacobowitz v. United States*, 191 Ct.Cl. 444, 457, 424 F.2d 555, 562 (1970).

Turning to the admissible evidence before the Appeals Authority, we feel its affirmance of specifications B, D and G of reason 2, specification B of reason 3, and specification B of reason 5 was supported by substantial evidence in the record as a whole. Evaluated relative to all the other admissible evidence, the statements of plaintiff's co—workers, to the extent detailed above, possessed sufficient probative force for the Appeals Authority to reasonably conclude that all of these specifications against plaintiff were in fact true. Hensley's account of the visit to Crystal Sugar is adequate to support the conclusion that notwithstanding plaintiff reported the visit as an inspection, no inspection in fact occurred. Fabricating an inspection surely amounts to conducting an inspection in violation of OSHA regulations. With regard to the trip to American Linen, Hensley asserted that (1) no carbon monoxide testing occurred even though plaintiff represented the test had occurred and no carbon monoxide found and (2) no employee representatives (union stewards) were contacted at any point in the inspection. This was adequate to support the conclusion that this inspection also had been improperly conducted. Representing that a test had occurred and no hazard found to exist when in fact no test occurred clearly is a failure to conduct an inspection in violation of OSHA regulations. Not contacting the employee representatives was a further reason why the American Linen inspection was improperly conducted in violation of OSHA regulations.[7] Ramirez' statement is also adequate to support the conclusion that the inspection of the Twin City construction site was improperly conducted. His statement established plaintiff conducted this inspection after hours, without any opening or closing conference, and without contacting any employee representatives, all of which were improper.[8] Concerning the

---

7. By failing to contact any employee representatives, such representatives were not aware of plaintiff's inspection and were therefore deprived of the opportunity to accompany plaintiff on his inspection. This was a violation of 29 C.F.R. § 1903.8(a) (1976) which provides that:

"§ 1903.8 *Representatives of employers and employees.*

"(a) Compliance Safety and Health Officers shall be in charge of inspections and questioning of persons. A representative of the employer and *a representative authorized by his employees shall be given an opportunity to accompany the Compliance Safety and Health Officer during the physical inspection* of any workplace for the purpose of aiding such inspection. * * *" [Emphasis supplied.]

8. The after—hours inspection was a violation of OSHA Field Operations Manual section V–D. 1.a. This provision provides that:

"D. Conduct of inspection.

"1. Entry of the workplace.

"a. Time of inspection. Inspections shall be made during regular working hours of the establishment, except as special circumstances may require. The Area·Director shall approve entry at other than daytime working hours,

except where obtaining approval would cause undue delay."

It was undisputed plaintiff did not obtain such approval from the Area Director. The record before the Appeals Authority also was devoid of any indication that obtaining such approval would have caused undue delay.

The opening conference occurs at the beginning of the inspection and entails the inspector's presenting his credentials and explaining the nature and purpose of the inspection. As made clear by 29 C.F.R. § 1903.7(a) (1976), such conference is mandatory:

"(a) Subject to the provisions of § 1903.3, inspections shall take place at such times and in such places of employment as the Area Director or the Compliance Safety and Health Officer may direct. At the beginning of an inspection, Compliance Safety and Health Officers *shall* present their credentials to the owner, operator, or agent in charge at the establishment; explain the nature and purpose of the inspection; and indicate generally the scope of the inspection and the records specified in § 1903.3 which they wish to review. * * *" [Emphasis supplied.]

The closing conference, required by 29 C.F.R. § 1903.7(e) (1976), is also mandatory. This regulation provides as follows:

Pembina trip, plaintiff admitted he claimed reimbursement for a motel when he in fact did not stay at one. The statements of plaintiff's "advice" to co–workers with respect to travel vouchers furnished adequate evidence for the Appeals Authority to conclude that in claiming such reimbursement plaintiff had intentionally falsified his travel voucher. Finally, since Hensley's statement furnished adequate support for the Appeals Authority to find plaintiff had purchased goods from a previously inspected establishment at a price lower than retail, it could have reasonably concluded this action amounted to a solicitation and/or acceptance of gratuities, arrangements or offerings in violation of 29 C.F.R. § 0.735–14.[9]

■ Additionally, while we note that in appropriate cases uncorroborated hearsay can be substantial evidence, *Verrault v. United States, supra,* these statements of plaintiff's co–workers all contained corroboration in the administrative record. The record before the Appeals Authority contained the affidavit of Crystal Sugar's Administrative Services Manager. He confirmed Hensley's account of this trip as just a tour which plaintiff subsequently chose to write up as an inspection. On February 2, 1977, a follow–up inspection of American Linen was conducted by another OSHA investigator. This report, signed by the investigator, indicated that at the time of plaintiff's January 10, 1977, inspection, there were union stewards at American Linen and plaintiff made no effort to contact them. This at least in part corrobo-

rated Hensley's version of plaintiff's inspection there. With respect to plaintiff's falsification of his travel voucher, Hensley, Ramirez and Stokes all mention various incidents in which plaintiff had indicated a propensity to intentionally inflate vouchers. By all three independently describing such conduct, their statements corroborate one another. Plaintiff's own affidavit confirms Ramirez' assertion that an after–hours inspection occurred at the Twin City construction site. Finally, plaintiff also offers corroboration as to his purchase at Super Valu. His affidavit stated that: "The fact is that Mr. Schaefer paid five percent (5%) *over* the price paid by [Super Valu's own] stores. * * * This could very easily amount to more than he would pay at a retail store." [Emphasis in original.] Based on this admitted 5 percent markup, the Appeals Authority could have found this price, as marked up, to in fact be less than the retail price of the juice. This would confirm Hensley's statement to the extent he indicated plaintiff made his purchase at a price less than retail.

■ In insisting these specifications are unsupported by substantial evidence, plaintiff makes two final arguments. Plaintiff's version of the facts surrounding the incidents giving rise to these specifications, as contained in his written submission to the Appeals Authority, is somewhat different from the facts as represented by Hensley, Ramirez and Stokes. Plaintiff feels that in light of this factual dispute, there could not be substantial evidence sup-

---

"(e) At the conclusion of an inspection, the Compliance Safety and Health Officer *shall* confer with the employer or his representative and informally advise him of any apparent safety or health violations disclosed by the inspection. During such conference, the employer shall be afforded an opportunity to bring to the attention of the Compliance Safety and Health Officer any pertinent information regarding conditions in the workplace." [Emphasis supplied.]

Plaintiff's conducting the inspection at a time when no employee representatives were at the job site deprived them of the opportunity to accompany plaintiff on his physical inspection. 29 C.F.R. § 1903.8(a), *see supra* note 7, imposed on inspectors the mandatory requirement that

they afford employee representatives this opportunity.

**9.** 29 C.F.R. § 0.735–14 (1976) provides in relevant part as follows:

"No employee shall solicit, accept, or agree any direct or indirect favor, gift, loan, free service, gratuity, entertainment, or other item of economic value if the donor has or is seeking to obtain contractual or other business or financial relations with the Department, has interests that may be substantially affected by the performance or nonperformance of official duties, is attempting to reward or influence the employee's official actions, or if acceptance of such item could affect the employee's impartiality, or give that appearance. * * *"

porting the sustaining of these specifications. Plaintiff is incorrect in his views. The possibility of drawing from the evidence before it two inconsistent conclusions as to these specifications does not prevent the Appeals Authority's conclusion upholding the specifications from being supported by substantial evidence. *See Illinois Central Railroad v. Norfolk & Western Railway,* 385 U.S. 57, 69, 87 S.Ct. 255, 262, 17 L.Ed.2d 162 (1966). It was entirely reasonable for the Appeals Authority to attach greater weight to the statements of plaintiff's co-workers and less to plaintiff's own statement. By doing so, there was substantial evidence sustaining the specifications. Plaintiff also contends that notwithstanding hearsay evidence may be admissible before the Appeals Authority, this court in deciding whether to sustain its action can only consider evidence which would be admissible under the Federal Rules of Evidence. This argument also has no merit. In reviewing an administrative agency decision to determine whether it was supported by substantial evidence, we may consider all the evidence properly admissible before the agency. This was implicit in all our prior decisions in which we held hearsay evidence could be substantial evidence supporting an administrative decision. *See, e. g., Wathen v. United States, supra.*

Since all of these specifications were supported by substantial evidence, the Appeals Authority's affirmance of the OSHA decision to remove plaintiff for the efficiency of Labor was supported by substantial evidence and was neither arbitrary nor capricious. These specifications establish plaintiff had committed the improprieties described in reasons 2, 3 and 5. There is no question these actions, especially when considered cumulatively, warranted plaintiff's removal.

▆ Plaintiff's final argument is directed to the appropriateness of granting defendant's motion for summary judgment. Plaintiff asserts that since his version of the facts surrounding the incidents giving rise to the specifications is different from that set out by Hensley, Ramirez and

Stokes, there presently exists a dispute as to facts material to the granting of defendant's motion. This dispute supposedly bars our granting defendant's motion. In making this argument, plaintiff misapprehends our function as a reviewing court. We are here reviewing the Appeals Authority's decision to see whether to attach finality to it. The Appeals Authority did consider plaintiff's version of the facts but chose to disbelieve plaintiff and instead believe the statements of plaintiff's co-workers. On review of its decision, we are concerned with this factual dispute only to the extent of determining whether notwithstanding plaintiff's contrary assertion as to the facts, the statements of plaintiff's co-workers amounted to substantial evidence. Having held such statements did amount to substantial evidence, the existence of a factual dispute on the administrative level is no longer relevant in our review of its decision. *See Pascal v. United States,* 211 Ct.Cl. at 188 n.3, 543 F.2d at 1287 n.3. This factual dispute before the Appeals Authority is therefore no bar to our granting defendant's motion for summary judgment.

## CONCLUSION

The Department of Labor's removal of plaintiff was procedurally correct. The Appeals Authority's decision sustaining this removal action being supported by substantial evidence and being neither arbitrary, capricious nor an abuse of discretion is entitled to finality. *E. g., Tucker v. United States,* Ct.Cl., 624 F.2d 1029 (1980); *Shapley v. United States,* 214 Ct.Cl. 783, 786 (1977). Attaching finality to its decision means plaintiff's removal was proper, entitling him to neither reinstatement nor back pay. This being dispositive of the issues in plaintiff's petition and there being no factual dispute preventing our granting a motion for summary judgment, we grant defendant's motion for summary judgment and dismiss plaintiff's petition in its entirety.