Daniel R. DIGGIN

v.

The UNITED STATES.

No. 583–79C.

United States Court of Claims.

Sept. 23, 1981.

---

John I. Heise, Jr., Silver Spring, Md., atty. of record, for plaintiff. John P. Rhody, Jr., Silver Spring, Md., of counsel.

John W. Showalter, Washington, D. C., with whom was Acting Asst. Atty. Gen., Thomas S. Martin, Washington, D. C., for defendant.

Before DAVIS, KASHIWA and SMITH, Judges.

## ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT

KASHIWA, Judge, delivered the opinion of the court:

This civilian pay case is before the court on the parties' cross motions for summary judgment. After consideration of the briefs and oral argument, for the reasons discussed below, we grant defendant's cross motion, deny plaintiff's motion, and dismiss the petition.

### I.

Plaintiff, a civilian employee of the Department of the Army, challenges his demotion from the position of Personnel Staffing Specialist, GS–0212–11, to the position of Tools and Parts Attendant, WG–6904–5/5. On September 1, 1974, plaintiff was promoted to the position at issue and later in the fall was permanently assigned to the Recruitment and Placement Branch of the Civilian Personnel Division, Directorate of Personnel and Community Activities, Fort Meade, Maryland. This Branch was responsible for staffing civilian employees in various entities at Fort Meade.

Depending on the party, plaintiff's problems either began immediately or, rather mysteriously, dramatically came to light approximately 3 months after his performance was rated "outstanding and excellent" on March 15, 1976. On June 25, 1976, plaintiff received a notice of consideration of withholding the within-grade increase. That was followed by a letter of warning from plaintiff's supervisor, Ms. Sneed, dated July 1, 1976. The letter of warning served as a

formal notice to plaintiff that he allegedly failed and continued to fail to satisfy the performance requirements of his position. Plaintiff was given a 90-day period to meet the performance standards (July 20-October 26, 1976, later extended to December 16, 1976).

At the conclusion of this period, plaintiff's performance allegedly continued to be unsatisfactory for his position. Hence, on February 22, 1977, plaintiff received a letter entitled "Notice of Proposed Adverse Action—Separation for Inefficiency." Details of facts in support of the proposed action were encompassed in this notice.[1] In the alternative, the notice presented plaintiff with the option of accepting a position as a Tools and Parts Attendant, WG–6904–5/5, earning $6.79 per hour (also at Fort Meade).

Plaintiff accepted under protest the option of demotion on March 21, 1977. Thereafter, plaintiff, through counsel, submitted a written reply to the proposed action. After considering plaintiff's written and oral replies, the demotion was sustained by Colonel Meredith on April 27, 1977. An appeal was taken to the Federal Employees Appeals Authority (FEAA) and after a hearing on February 8, 9 and 10, 1978, the FEAA sustained elements (2) quantity and timeliness and (7) supervision and administration and upheld the demotion. The Office of Appeals, Merit Systems Protection Board, denied plaintiff's request for a review of the FEAA decision.

### II.

■ Our review of civilian pay cases is very limited. As we recently stated in *Brousseau v. United States*, 226 Ct.Cl. ——, ——, 640 F.2d 1235, 1241 (1981), *quoting, Giles v. United States*, 213 Ct.Cl. 602, 605, 553 F.2d 647, 649 (1977):

It is long settled that "in considering these adverse personnel actions our review is limited to ascertaining that the

---

1. This charge of inefficiency consisted of seven elements, *viz.,* (1) technical competence, (2) quantity and timeliness, (3) written communi cation, (4) oral communication, (5) cooperation, (6) stability, and (7) supervision and administration.

final administrative appellate decision was in conformance with the Constitution, statutes, and regulations, was not arbitrary or capricious or taken in bad faith, and was supported by substantial evidence. * * * "

And the good faith of those involved in bringing the action is presumed. . *Id.; Wathen v. United States*, 208 Ct.Cl. 342, 527 F.2d 1191 (1975), *cert. denied*, 429 U.S. 821, 97 S.Ct. 69, 50 L.Ed.2d 82 (1976).

The primary issue before us is whether there is substantial evidence supporting the decision of the FEAA. Before we analyze that issue, however, we choose to discuss the somewhat subsidiary questions posed by plaintiff.

■ A. The facts disclose the following sequence: On March 15, 1976, plaintiff received a rating of "outstanding and excellent" by his supervisor, Eileen Sneed. Within less than 3 months, the·same supervisor notified him of a possible withholding of his within-grade step increase and, subsequently, within the year, proposed removing him. We are not left to fend for ourselves and ferret out the facts of this abrupt change in circumstances, however, for the defendant confesses and Ms. Sneed explains she intentionally rated the plaintiff high to, as "many supervisors in the Government" do, "pass an unsatisfactory employee on to another [unsuspecting] employer." Transcript part II, pp. 126–127 (Tr.). While such conduct on the part of Ms. Sneed amounts to a subversion of the procedures established for removing unsatisfactory employees, her conduct is not sufficient to render the action taken against plaintiff arbitrary or capricious.

■ We have held elsewhere that a performance review rating and the removal of an employee are separate actions. *Schaefer v. United States*, 224 Ct.Cl. ——, ——, 633 F.2d 945, 948 (1980); *Armstrong v. United States*, 186 Ct.Cl. 539, 544–545, 405 F.2d 1275, 1278–1279, *cert. denied*, 395 U.S. 934, 89 S.Ct. 1997, 23 L.Ed.2d 449 (1969). Thus, there is no reason for an employee to receive an unsatisfactory rating as a prerequisite for dismissal. Or, conversely, the fact plaintiff received an "outstanding and excellent" rating shortly before his proposed removal does not affect the correctness of defendant's removal action. *Schaefer v. United States*, 224 Ct.Cl. at ——, 633 F.2d at 948; *Armstrong v. United States*, 186 Ct.Cl. at 545, 405 F.2d at 1279. Nor does this demonstrate, without additional facts, that plaintiff was conspired against.[2]

■ B. Plaintiff next alleges that the oral reply officer, Colonel Meredith, "was obviously predisposed to issue a decision against plaintiff," and, hence, was improperly designated as reply officer. This argument consisting almost entirely of suppositions and conclusory statements without any convincing factual backup is likewise without merit.

Briefly, Colonel Meredith had earlier sustained the denial of plaintiff's within-grade increase. Approximately 3 months later he was designated, contrary to plaintiff's protests, as the oral reply officer in the demotion proceeding. Thus, plaintiff seems to be arguing that by hearing a prior action an official acquires a bias (or at least presumptively does) which renders such official's decision inherently "grossly unfair." Again, the evidence relied on by plaintiff is paltry at best.

2. Plaintiff also challenges the Standards of Performance issued to him on the ground that they describe an unrealistically high level of performance for an acceptable level of competence. While the standards issued do require a high degree of competence, they are neither unrealistic nor unattainable. Contrary to plaintiff's assertions, reasonably read they do not require perfection. For example, element 2, quantity and timeliness, states in part:

"There is no standard measure of quantity. The employee is expected, in lieu of a set stan-

dard, to insure that all positions in all organizations services [*sic*] be filled in as expeditious manner [*sic*] *as possible.* * * * Individual cases in which this goal cannot be achieved will be reported to supervisor [*sic*] immediately with an explanation of the failure and a sound plan to obtain candidates as quickly as possible." (Emphasis supplied.)

Thus flexibility is provided and there is similar flexibility provided in element 7, supervision and administration.

We feel the FEAA properly considered this issue. The FEAA correctly found that the regulations did not prohibit Colonel Meredith from acting as oral reply officer. As such, without some substantiation of this bias charge the FEAA quite properly found no defect with Colonel Meredith's actions. We, too, are not persuaded any bias existed on the part of Colonel Meredith. This is especially true because when we review a charge of bias against government officials, "It is a well-established rule that [they] are presumed to act in good faith in the performance of their duties." *Schaefer v. United States*, 224 Ct.Cl. at ——, 633 F.2d at 949; *see Kalvar Corp. v. United States*, 211 Ct.Cl. 192, 198, 543 F.2d 1298, 1301–1302 (1976), *cert. denied*, 434 U.S. 830, 98 S.Ct. 112, 54 L.Ed.2d 89 (1977). And we require "well-nigh irrefragable proof" to induce us to abandon this presumption. *Id.* Plaintiff has not even come close to approaching this standard.

Accordingly, our review of the FEAA decision and the record reveals nothing to substantiate plaintiff's allegations of bias and we therefore reject plaintiff's arguments on this issue.[3]

### III.

We now turn to the key issue of this case, *viz.*, whether there was substantial evidence to support the demotion of plaintiff.

There were seven charges against plaintiff, *see* note 1, *supra*, two of which were sustained by the FEAA: (1) quantity and timeliness and (2) supervision and administration. Plaintiff's chief contention is that the decision of the FEAA erroneously rested on uncorroborated hearsay despite plaintiff's contrary testimony and documentation and that the burden was improperly shifted by the FEAA to plaintiff to prove his competence.

The three major issues raised in this question are (1) whether the alleged hearsay evidence can constitute substantial evi-

dence, (2) whether the defendant adequately countered the evidence put forward on plaintiff's behalf, and (3) whether the FEAA impermissibly shifted the burden of proof to plaintiff.

■ Initially, we note that hearsay evidence is admissible in adverse action proceedings. *Schaefer v. United States, supra; West v. United States*, 207 Ct.Cl. 513 (1975); *Verrault v. United States*, 216 Ct.Cl. 386 (1978). *See Brousseau v. United States*, 226 Ct.Cl. at ——, 640 F.2d at 1241 (strict rules of evidence do not apply to administrative proceedings). The only requirement on its admissibility is that it must be "sufficiently convincing to a reasonable mind and * * * it reveals sufficient assurance of its truthfulness." *Pascal v. United States*, 211 Ct.Cl. 183, 191, 543 F.2d 1284, 1289 (1976). Furthermore,

In reviewing administrative decisions, hearsay evidence can, in appropriate cases, amount to substantial evidence. *Verrault v. United States, supra; Wathen v. United States*, 208 Ct.Cl. 342, 527 F.2d 1191 (1975), *cert. denied*, 429 U.S. 821, [97 S.Ct. 69, 50 L.Ed.2d 82] (1976); *West v. United States, supra; McKee v. United States*, 205 Ct.Cl. 303, 500 F.2d 525 (1974). *Once held admissible, such evidence is under no special disadvantage because of its hearsay character.* In deciding whether particular hearsay evidence amounts to substantial evidence, we apply the same standard applied to all other evidence properly before an administrative agency. *In any particular case, hearsay evidence can therefore be "substantial evidence" if it has sufficient probative force such that a reasonable man might accept it as adequate to support the conclusion reached by the agency.* In seeing whether particular hearsay evidence is sufficiently probative, such hearsay evidence is to be evaluated relative to all the other evidence, including other hearsay, properly before the administra-

---

**3.** Nor do we find the agency failed to comply with any of the necessary procedures, *e. g.*, provide counseling, adequately search for other appropriate positions for plaintiff, or furnish

sufficient specificity in the April 22, 1977, letter from Colonel Meredith effecting plaintiff's demotion.

tive agency. *McKee v. United States, supra; Reil v. United States,* 197 Ct.Cl. 542, 456 F.2d 777 (1972). This need for such evaluation necessarily means there exists no hard and fast rule as to when hearsay constitutes substantial evidence. Rather, this determination must be made on a case by case basis. *Jacobowitz v. United States,* 191 Ct.Cl. 444, 457, 424 F.2d 555, 562 (1970). [*Schaefer v. United States,* 224 Ct.Cl. at ——, 633 F.2d at 952–953; footnote omitted; emphasis supplied.]

■ Therefore, it is clear hearsay evidence is admissible and may under the proper circumstances constitute substantial evidence. The more difficult question is whether under our facts the evidence presented by the defendant amounted to substantial evidence—in light of plaintiff's testimonial and documentary evidence. This determination is subject to no easy rule and must be decided under the facts of each case. *Id.*

### A. *Quantity and Timeliness*

■ There were 19 specifications in the charge that plaintiff's work did not satisfy his position's standards for quantity and timeliness. Thirteen of them were sustained below.[4] Plaintiff, however, does not attack these findings; instead, plaintiff asserts that the appeals officer improperly shifted the burden of proof from the agency to plaintiff. Plaintiff's factual contention in defense of himself is that his record of timeliness was "not so unusual, so poor, or so lengthy to support a separation action." Specifically, plaintiff testified that his team in the Recruitment Placement Office was better in terms of timeliness than the other team. Also, plaintiff argues the defendant failed to show a nexus between the time it took plaintiff to process a personnel action and plaintiff's separation for the efficiency of the service.

The major support of plaintiff's assertion that the burden was impermissibly shifted rests in the following statement in the FEAA decision:

In this regard, it is further noted that, as an *affirmative defense,* the appellant has the burden to do more than merely allege certain facts and circumstances. Although the appellant alleges that his team's record was equal to or better than the other team's record, and although the appellant alleges certain statistics to exist which might support such allegation, the appellant offers no evidence to support such allegations, even though such evidence was obviously available to him. * * Consequently, the appellant's mere assertions, absent any supportive evidence which was obviously available to the appellant, can be given no weight. [Emphasis supplied.]

After our examination of the entire FEAA decision, however, we place a different interpretation on the above-quoted statement. The FEAA statement is in response to plaintiff's argument that even if all 19 specifications were sustained, the delay would not be out of line in comparison with other installations of the Department of the Army. As a result, plaintiff concluded he was being "singled out" for criticism. The appeals officer then, responding to this argument, found, in short, that plaintiff failed to prove this contention. This is an entirely different proposition than saying the ultimate burden of proof has been shifted.

Furthermore, the appeals officer had more than merely plaintiff's failure of proof on this issue to support his decision. He found in the 13 specifications which were sustained that: (1) plaintiff did not deny the incident occurred or (2) his denial or explanation was insufficient. Again, we do not read this to mean the burden of

---

4. The sustained specifications include, *e. g.,* category a., substantial delay in filling two Upward Mobility Program positions; category c., 2-month delay in issuing a referral list to fill the position of Security Review Clerk, GS–7; category d., failure to meet many commitments, even those he set for himself; category j., tardiness in submitting two promotion actions causing the promotion actions not to be effected during the proper pay period; and category k., consistent lateness with weekly status reports, which at times were incomplete.

proof shifted to plaintiff. Instead, our review of the record indicates plaintiff failed to effectively rebut the evidence placed in the record against him. In addition to the written charges, there is oral testimony which also substantiates the finding that the charge relating to quantity and timeliness should be sustained. For example, Ms. Sneed testified she was receiving frequent and continuous complaints because plaintiff did not fill vacancies quickly enough; that plaintiff failed to answer problems or gave incomplete responses; and that she was not receiving complaints about the other office team. Tr. part II, pp. 34–38. Ms. Sneed also testified that plaintiff's removal would promote the efficiency of the service. Tr. part II, p. 65A. Finally, Ms. Sneed testified that plaintiff never performed adequately and that even as an intern he did not make the progress an intern should make. Tr. part II, p. 70. This testimony was reaffirmed by Ms. Sneed on cross-examination. Tr. part II, p. 86.

Ms. Sneed's appraisal of plaintiff was likewise affirmed by her assistant, Joseph Tarulli, who had at times also acted as plaintiff's supervisor. Mr. Tarulli testified that plaintiff was not performing efficiently. This assessment was based on plaintiff's "inability to meet suspense actions, to have actions processed in a timely fashion, his inability to set priorities, his inability to effectively communicate, and an apparent lack of sense of urgency." Tr. part III, p. 2–6. He further testified that plaintiff's performance caused delays and resulted in errors in ratings of people. Tr. part III, p. 2–23. Finally, Mr. Tarulli testified plaintiff's removal would promote the efficiency of the service:

5. In addition, we reject the argument that plaintiff was not the worst employee and therefore those worse than he should be sought out first or that this evinces proof of a conspiracy against plaintiff. Plaintiff was shown to be inefficient and thus his demotion would promote the efficiency of the service. This is sufficient.

6. "Element 7. Supervision and Administration. Each member of your team has complained to me concerning your performance as a team leader. They do not believe that you give them adequate guidance or instructions. Mrs. Cavanaugh, the Personnel Staffing Spe-

Because it will allow for a more expeditious filling of positions in the organizations for which he was responsible and a higher quality of applicants for the selecting official to select from. And this having the positions filled more promptly and having a better quality of employee in the position will enable each of these activities to more effectively perform their own mission. [Tr. part III, p. 2–27.]

■ Thus, in light of the charges and the specifications and the testimony put forth by the defendant, which was subject to cross-examination, we agree with the FEAA and find plaintiff's assertions to the contrary do not outweigh the evidence summarized above.[5]

As a final matter, plaintiff argues that the defendant failed to show a sufficient nexus between this element and the penalty imposed. The short answer to this allegation is that plaintiff's proven inefficiency "speaks for itself" in revealing how the demotion promoted the efficiency of the service. *Cf. Brousseau v. United States, supra.* This is not a case involving a criminal action or another isolated fact easily recalled to prove the harm caused the agency; rather, this case involves a day-to-day pattern of inefficiency, error, and resultant low employee morale. Such activities need not be countenanced and such an employee quite properly may be removed or demoted.

**B. Supervision and Administration**

■ The FEAA also sustained element 7, dealing with supervision and administration.[6] Plaintiff's chief complaint here is

cialist (Trainee) on your team has expressed to me her concern over the poor quality of training she is receiving from you. She states that you give her assignments with no instructions or guidance. She has therefore found it necessary to come to me or to the other team chief for guidance. I believe this to be a result of your lack of technical competence and your failings in oral expression. In reviewing some of the assignments which you have given to Mrs. Kline, your staffing assistant I discovered that you had instructed her to make the determination as to whether a particular reclassification action (from Management Assistant

that this element should not be sustained because defendant failed to call three witnesses—Mrs. Cavanaugh, Mrs. Gordon, and Mrs. Alexander—to testify as to the basis for the charge.

The import of plaintiff's argument is that since plaintiff testified he received no complaints, we must determine whether the evidence produced by defendant is sufficiently probative to amount to substantial evidence. *Schaefer v. United States, supra.*

In determining the probative value of this evidence in comparison to that offered by plaintiff, among other things we look to see whether it was subjected to the adversary process. *See J. D. Hedin Construction Co. v. United States,* 187 Ct.Cl. 45, 52, 408 F.2d 424, 428 (1969). In this regard, Ms. Sneed stated in the charge that she had received complaints from four members of plaintiff's team. Ms. Sneed both testified at the hearing and was subjected to cross-examination. Thus, plaintiff had the opportunity to challenge her statement. For whatever reason, Ms. Sneed was not cross-examined on this point; we will not interfere with the tactical decisions of counsel but in light of the extremely detailed nature of the charges and plaintiff's opportunity to challenge Ms. Sneed on cross-examination, we find the charges are probative evidence. This is further buttressed here by the fact that Mrs. Kline (one of the team members mentioned in the charge) did testify at the hearing. In this testimony she repeated with specificity her belief that

plaintiff lacked ability with regard to supervision and administration. Tr. part III, pp. 2–127—2–129. She also testified that callers refused to talk to plaintiff out of a belief he would not answer their questions, Tr. part III, pp. 2–131—2–132; that plaintiff's lack of organization prevented him from adequately assisting and supervising her; and that this lack of organization impaired the efficiency of the service. Tr. part III, pp. 2–133—2–138.

Also, another member of plaintiff's team, Margaret Helford, testified as to plaintiff's lack of supervisory skills.[7] She testified plaintiff was not an effective team chief, Tr. part III, p. 2–79; that other team members sought her out for advice after receiving unsatisfactory supervision from plaintiff, Tr. part III, pp. 2–80 & 2–82; and that correct guidance was not being given, Tr. part III, p. 2–83.

In light of the above, the detailed charges plus the oral testimony in support of those charges, being subject to the opportunity for review by plaintiff, amount to substantial evidence in support of element 7 because they possessed sufficient probative force "that a reasonable man might accept it as adequate to support the conclusion reached by the agency." *Schaefer v. United States,* 224 Ct.Cl. at ——, 633 F.2d at 952. We do wish to state at this juncture that the Civil Service Reform Act of 1978, Pub. L.95–454, 92 Stat. 1111, effected significant procedural and substantive changes in the

GS 7 to Management Assistant GS–9) was a planned management action or a result of job accretion. This is one of the most difficult types of determinations to make and one that clearly calls for your attention and not that of a staffing assistant. In addition you had assigned Mrs. Kline the task of determining the basis for the reclassification of an Aircraft Pilot GS–12 position to a Supervisory Aircraft Pilot GS–13. Mrs. Kline, acting with no guidance from you, determined that the basis for the action was job accretion. It was, in fact, due to the application of new standards. You did not discover her error and the action was processed as job accretion. The error was later discovered by Mr. Tarulli and it was necessary to initiate corrective action. This is another determination which you should have made personally. These two cases are indicative of

the fact that you do not properly assign the work among your team members, nor do you provide proper instruction and guidance. Mrs. Gordon, a clerk formerly assigned to your team came to me on 1 October requesting guidance on clearing DOD stopper lists. She stated that she had requested the guidance from you without success. I spent one hour with her explaining clearance procedures. Mrs. Alexander, your newly hired personnel clerk has sought my advice regarding what she considers to be your incomplete, late, sketchy instructions. Again, I believe that the poor level of instruction which you provide your team members is due to your own lack of technical competence."

7. This witness was not mentioned in the charge.

law regarding adverse actions. As such, this case is not only subject to the normal rule that the nature of the evidence must be judged according to the individual facts and circumstances there present, *e. g., Schaefer v. United States, supra*, but also is limited by any changes wrought under the Civil Service Reform Act of 1978.

## IV.

■ As a final basis for attack, plaintiff argues that the penalty is too severe, rendering it arbitrary and capricious. As we have stated in the past, the measure of the penalty is within the discretion of the agency. *Birnholz v. United States*, 199 Ct.Cl. 532 (1972); *Heffron v. United States*, 186 Ct.Cl. 474, 484, 405 F.2d 1307, 1312 (1969). Our standard of review is not whether we would demote plaintiff if we were in charge. *Swentek v. United States*, Ct.Cl. No. 28–79, 658 F.2d 791 (1981); *Webb v. United States*, Ct.Cl. No. 96–80C (order of May 29, 1981). We will only upset the penalty imposed by the agency in the extremely limited circumstance where the penalty is so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion by the agency. *E. g., Power v. United States*, 209 Ct.Cl. 126, 130, 531 F.2d 505, 507 (1976).

■ This is not an appropriate case to upset the penalty. Plaintiff was found to be inefficient in the performance of an important and responsible job, and such inefficiency had a deleterious effect on the personnel staffing at Fort Meade. Under these circumstances we find the penalty is not too harsh and therefore refuse to upset plaintiff's demotion.

## CONCLUSION

After consideration of all the arguments, for the reasons discussed above, we deny plaintiff's motion for summary judgment, grant defendant's cross motion for summary judgment, and dismiss the petition.