**SHERMCO INDUSTRIES, INC., Plaintiff,**

**v.**

**The UNITED STATES, Defendant.**

**No. 50–84C.**

United States Claims Court.

Nov. 13, 1984.

C. Thomas Wesner, Jr., Dallas, Tex., for plaintiff.

Helene M. Goldberg, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, Washington, D.C., for defendant.

## OPINION

NETTESHEIM, Judge.

This unsuccessful bidder action comes before the court on defendant's motion for summary judgment. Defendant contends that plaintiff's claim is barred by the United States Claims Court's six-year statute of limitations, 28 U.S.C. § 2501 (1982), and by the doctrine of collateral estoppel. By its opposition plaintiff disputes both of these contentions.

## FACTS

Shermco Industries, Inc. ("plaintiff"), sought award of three contracts with the Department of the Air Force for the repair and overhaul of aircraft generators and motors. At issue are Air Force solicitations FO4606–76–R–0284 ("0284"), FO4606–76–R–0300 ("0300"), and FO4606–77–R–0814 ("0814").

Plaintiff submitted the lowest bid on both 0284 and 0300. Nevertheless, on June 16, 1976, an Air Force contracting officer denied plaintiff an award of these contracts because he found the corporation nonresponsible under ASPR, 32 C.F.R. § 1–903.-1(iv) (1976), based on an unsatisfactory record of integrity.

In response to these denials, plaintiff sued in the United States District Court for the Northern District of Texas, *Shermco Industries, Inc. v. Secretary of the Air Force, et al.,* C.A. No. 3–76–1186–G, seeking, *inter alia,* to compel an award of 0284 and 0300. Evidence of noncompliance with the provisions of 15 U.S.C. §§ 631–647 (1976), and ASPR, 32 C.F.R. §§ 1–905.1(a), 1–904.1, and 1–705.4(c)(vi) in the contracting officer's June 16, 1976 nonresponsibility determination warranted the district court's reversal of that determination in an unpublished opinion dated November 22, 1976 (*"Shermco I"*). Acting in a referee's capacity and seeking to correct regulatory violations, the district court further ordered that the "parties be returned to their respective status immediately before" the June 16, 1976 nonresponsibility determination. *Shermco I,* slip op. at 11.

The contracting officer again reviewed plaintiff's bids on 0284 and 0300 and on December 3, 1976, determined for a second time that plaintiff lacked the requisite responsibility to perform these contracts. Pursuant to regulation, the contracting officer's decision was forwarded to the Small Business Administration (the "SBA") for review. On December 14, 1976, the SBA adjudged that plaintiff possessed the necessary responsibility to perform 0284 and 0300 and, pursuant to 32 C.F.R. § 1–705.-4(c)(vi), appealed, on plaintiff's behalf, the contracting officer's nonresponsibility determination. On January 11, 1977, Air Force Procurement and Production Designee, General Kelly, denied the SBA's appeal, finding that the contracting officer's determination was supported by substantial evidence and was reasonably based.

On June 27, 1977, plaintiff submitted a bid in response to Solicitation 0814. By a September 12, 1977 decision, the contract-

ing officer determined plaintiff to be non-responsible. The matter was referred to the SBA which issued plaintiff a Certificate of Competency ("COC"). The Air Force unsuccessfully appealed the COC issuance to the SBA's Washington Headquarters, and on January 20, 1978, plaintiff was awarded the COC.

On December 16, 1977, just prior to issuance of the COC, plaintiff had been indicted on charges of violating the False Claims Act, 18 U.S.C. § 287 (1976). In response the Air Force initiated suspension proceedings pursuant to ASPR, 32 C.F.R. § 1.605 (1976), and plaintiff was formally suspended on February 7, 1978. Plaintiff alleges that the Air Force was dilatory in initiating this *de jure* suspension proceeding, contending that the resulting delay precluded it from receiving contract awards and thus amounted to a *de facto* suspension prior to February 7, 1978. 0814 was awarded to another bidder during plaintiff's formal suspension.

In a June 2, 1978 letter directed to John Lackey, ("Lackey") Chief, Small Business and Contractor Relations Office, Sacramento Air Logistics Center, the SBA noted plaintiff's receipt of COC's corresponding to 0284 and 0300 and 0814. The first two were issued prior to the decision in *Shermco I* and the third, on January 20, 1978. The letter also noted the dismissal of plaintiff's indictment. Accordingly, the SBA recommended that plaintiff be awarded all three contracts.

Lackey responded on June 9, 1978 by cancelling solicitations 0284 and 0300 and apprising the SBA that 0814 had been awarded during plaintiff's formal suspension. Plaintiff contends here that Lackey's June 9, 1978 correspondence was tantamount to a second *de facto* suspension. Plaintiff also challenged in another action filed as *Shermco Industries, Inc. v. Secretary of the Air Force, et al.*, 584 F.Supp. 76 (N.D.Tex.), the Air Force's nonresponsibility determinations and contract award denials in district court, seeking declaratory and injunctive relief against government officials. After trial the court issued on

January 26, 1984, an opinion, 584 F.Supp. 76 (N.D.Tex.1984) (*"Shermco II"*), holding: that the contracting officer's determination not to award 0284 and 0300 to plaintiff, although noncompliant with regulations, was nevertheless based upon substantial evidence; that the Air Force properly rendered a nonresponsibility determination with respect to 0814; that plaintiff had been suspended *de facto* during 1977; that the February 7, 1978 formal suspension was based upon adequate evidence; and that since all determinations were supported by substantial evidence, the court could not grant plaintiff the relief it sought despite defendant's procedural noncompliance.

Plaintiff filed its complaint in this court on February 2, 1984, seeking monetary damages arising from defendant's alleged regulatory and constitutional violations occurring throughout the procurement process.

## DISCUSSION

Plaintiff submitted an affidavit of its president in opposition to defendant's motion for summary judgment, but none of his averments bears on the jurisdictional issue that is deemed dispositive. *See Levi Strauss & Co. v. Genesco, Inc.*, 742 F.2d 1401, 1404 (1984) (argument cannot substitute for factual statements under oath that establish a genuine issue of material fact).

Due to the differing factual particulars of the three solicitations at issue and for purposes of clarity, this opinion will address the statute of limitations issue first generally, secondly as it relates to 0284 and 0300, thirdly as it relates to 0814, and finally as it relates to the prior district court proceeding in *Shermco II.*

*Statute of Limitations Generally*

■ There is no question that 28 U.S.C. § 1491 (1982), authorizes plaintiff to bring this action in the Claims Court. *See Electro-Methods, Inc. v. United States*, 3 Cl.Ct. 500, 506–08 (1983), *rev'd on other grounds*, 728 F.2d 1471 (Fed.Cir.1984). However, defendant's motion challenges whether plain-

tiff's February 2, 1984 complaint was filed within six years from the date that its claims accrued. In short, the parties differ as to when plaintiff's claims accrued. The court's inquiry begins by recognizing that "[t]he statute of limitations is jurisdictional and must be strictly construed to avoid the prosecution of stale claims." *Schmidt v. United States,* 3 Cl.Ct. 190, 192 (1983) (citations omitted). Moreover, any exception to the statute must be narrowly construed and applied only under compelling circumstances. *Bonen v. United States,* 229 Ct.Cl. 144, 150, 666 F.2d 536, 540 (1981), *cert. denied,* 456 U.S. 991, 102 S.Ct. 2273, 73 L.Ed.2d 1286 (1982). The Claims Court has indicated that this rigid time bar can be waived only if the claimant was under a legal disability or beyond the seas. *Warren v. United States,* 4 Cl.Ct. 552, 555 (1984).

### 0284 and 0300

■ Plaintiff claims that its cause of action with respect to 0284 and 0300 arose on June 9, 1978, when the Air Force cancelled the two solicitations.

Although there is no case law specifically addressing the question of the precise time at which a disappointed bidder's cause of action arises [1], this court's predecessor has set two general standards relating to the question of when a cause of action accrues for purposes of 28 U.S.C. § 2501. The United States Court of Claims established as a general rule, which the Federal Circuit has reaffirmed, that "[a] claim against the United States first accrues on the date when all the events have occurred which fix the liability of the government and entitle the claimant to institute an action." *Oceanic Steamship Co. v. United States,* 165 Ct.Cl. 217, 225 (1964) (citations omitted); *accord L.S.S. Leasing Corp. v. United States,* 695 F.2d 1359, 1365 (Fed.Cir. 1982).

Because the regulations provide no further relief after the appeal procedure set forth in 32 C.F.R. § 1.705.4(c)(vi),[2] all events occurred to fix the Government's alleged liability when General Kelly denied the SBA's appeal on January 11, 1977.[3] Therefore plaintiff's cause of action accrued at that time. *See Brownfield v. United States,* 218 Ct.Cl. 477, 482, 589 F.2d 1035, 1037 (1978) (claim first accrues when official or agency responsible for determining plaintiff's rights takes final action dispositive of claim).

Another standard established by the Court of Claims aids in determining when a cause of action accrues for purposes of 28 U.S.C. § 2501. In *Terteling v. United States,* 167 Ct.Cl. 331, 338, 334 F.2d 250, 254 (1964), the court stated: "It is too well established to require citation of authority that a claim does not accrue until claimant has suffered damages ...." A claim accrues when "damages are ascertainable." *Johnson, Drake & Piper, Inc. v. United States,* 209 Ct.Cl. 313, 329–330, 531 F.2d 1037, 1047 (1976) (citing *Terteling*). Plaintiff's damages were ascertainable or initially suffered when General Kelly denied the SBA's appeal on January 11, 1977. Kelly's

---

1. 28 U.S.C. § 1491(a)(3) (1982), authorizes a cause of action alleging violations of the procurement process to be brought prior to either the award of a contract or cancellation of a solicitation for bids.

2. 32 C.F.R. § 1–705.4(c)(vi) provides in part: Within ten working days of the SBA's written notification to the contracting officer [of its intent to appeal the contracting officer's determination], the SBA shall present to the head of the procuring activity or his designee the appeal in writing. Such appeal shall contain the basis for the SBA position, and include statements from the small business concern as to tenacity, integrity and perseverance and how deficiencies noted in the contracting offi-

cer's determination have been or will be eliminated. After consideration of the appeal, *the decision by the head of the procuring activity or his designee shall be final ...."* (Emphasis added.)

3. Plaintiff incorrectly suggests by the proffer of a letter from the SBA dated June 2, 1978, that the denial of the SBA's appeal on January 11, 1977, somehow was invalidated by the March 10, 1978 dismissal of the indictment and corresponding relief from formal suspension. Regulations then in effect rendered the January 11, 1977 determination final and conclusive and therefore unsusceptible to retroactive invalidation in the manner suggested. *See supra* note 2.

denial of the appeal adversely affected plaintiff because it marked the exhaustion of its administrative remedies with respect to 0284 and 0300. Moreover, denial of the appeal was the point at which bid preparation costs were ascertainable. Plaintiff cannot contend plausibly that its damages were initially ascertainable only when the Air Force cancelled solicitations 0284 and 0300. The cancellation merely represented a continuation of any damages plaintiff initially suffered on January 11, 1977. Its only effect, and one not relevant to this court's statute of limitations inquiry, was to preclude all contractors, and not simply plaintiff alone, from receiving contracts 0284 and 0300.

Under the circumstances the Government's alleged liability with respect to 0284 and 0300 arose on January 11, 1977. Accordingly, plaintiff's action filed in this court on February 2, 1984, is time barred.

*0814*

In its pleadings plaintiff adopts inconsistent positions regarding the events that it alleges form the basis for its cause of action with respect to 0814. Plaintiff's complaint cites no date, but implies that it is seeking relief with respect to 0814 for the alleged *de facto* suspension that occurred in 1977. In opposition to defendant's motion for summary judgment, however, plaintiff contends that this claim is based upon a second *de facto* suspension that allegedly occurred on June 9, 1978.

The district court's opinion in *Shermco II* recounts the following facts surrounding the initial alleged *de facto* suspension: On June 27, 1977, plaintiff responded to solicitation 0814 with the lowest bid. The contracting officer made the nonresponsibility determination on September 12, 1977. The SBA issued plaintiff a COC on January 20, 1978. Formal suspension proceedings were initiated against plaintiff on December 28, 1977, but such action was taken only after

a grand jury returned the December 16, 1977 indictment against plaintiff. 584 F.Supp. at 92–93.

■ The applicable law indicates that a *de facto* suspension or debarment from participation in government business arises when a procuring body refuses, for an indefinite period of time, to grant awards to a particular contractor. *Art-Metal-U.S.A. v. Solomon,* 473 F.Supp. 1, 5 (D.D.C.1978). In *Horne Brothers, Inc. v. Laird,* 463 F.2d 1268, 1271 (D.C.Cir.1972), the court stated that fundamental fairness requires that a contractor be accorded procedural due process where it is contemplated that the contractor "may dangle in suspension for a period of one year or more."

Applying the law to the facts, the court in *Shermco II* determined that plaintiff had been suspended *de facto* "during 1977" based on two findings: that the Air Force delayed in awarding 0814 by improperly [4] going through the process of nonresponsibility determination and appeal and that such delay tactics were used because the Air Force did not want to initiate suspension proceedings until plaintiff was indicted for criminal fraud. The district court thus concluded that the Air Force's actions "during 1977" precluded plaintiff from doing business with the Government and specifically from participating in procurement activities relating to 0814. As a consequence of these actions, plaintiff suffered damages to the extent that it was denied due process during this period. 584 F.Supp. at 92–94.

■ Based upon the opinion in *Shermco II* and the standards for accrual of actions, the Government's alleged liability with respect to 0814 arose during 1977, thereby placing plaintiff's action filed in 1984 without this court's statute of limitations.

Plaintiff's contention that its cause of action with respect to 0814 accrued by vir-

**4.** The opinion in *Shermco II* indicates that, prior to the court's nonresponsibility determination on 0814, the contracting officer had issued the same determinations on identical grounds in 0284 and 0300. 584 F.Supp. at 93–94. Such successive determinations of nonresponsibility on the same grounds are improper; rather, a procuring agency must initiate suspension or debarment procedures at the earliest practical date following the first determination of nonresponsibility. *See S. Kane & Son, Inc.,* 43 Comp. Gen. 140, 141 (1963).

tue of a 1978 *de facto* suspension is not only inconsistent with the allegations of the complaint, but legally and factually unsupportable. Plaintiff has no basis for claiming that, by virtue of the June 9, 1978 letter, which is offered in support of its contention, plaintiff was suspended or debarred from participation in government business. The letter merely informed plaintiff that during its formal suspension, and period of contract ineligibility, 0814 had been awarded to another bidder.[5] It neither proves a June 9, 1978 *de facto* suspension nor gives rise to a cause of action.

*Shermco II—Tolling the Limitations Period*

Plaintiff contends that its prior district court action in *Shermco II* tolled the statute of limitations for purposes of this action because it could not have sought monetary relief in this court while its claim for equitable relief was pending in the district court.

In *Ball v. United States*, 133 Ct.Cl. 841, 137 F.Supp. 740, *cert. denied*, 352 U.S. 827, 77 S.Ct. 41, 1 L.Ed.2d 50 (1956), the court held that the pendency of plaintiff's district court action seeking reinstatement to his former rank in the Navy did not serve to toll the statute of limitations for his subsequent suit in the Court of Claims in which he sought back pay. The court relied on the fact that the "right to recover on the salary claims was in no way dependent upon a final judgment in [the] reinstatement proceeding...." 133 Ct.Cl. at 846, 137 F.Supp. at 744; *accord Casman v. United States*, 135 Ct.Cl. 647, 649–50 (1956) (district court action for injunctive relief and Court of Claims action for back pay held to be "entirely different claims").

Plaintiff in this case, as in *Ball*, sought equitable relief in district court and subsequently sought monetary relief in this court. As in *Ball*, neither action is dependent upon the other. In the instant case, plaintiff had, before the commencement of its district court action, a completely accrued cause of action for monetary relief on which it might then have brought suit in this court. *See Ball*, 133 Ct.Cl. at 846, 137 F.Supp. at 744. Moreover, plaintiff's limitations period is not tolled even though the pendency of the district court proceeding may have deprived the Claims Court of jurisdiction over this subsequent action for monetary relief. *Sohm v. United States*, 3 Cl.Ct. 74, 79 (1983) (citing *Ball*).[6]

## CONCLUSION

Based on the foregoing, defendant's motion for summary judgment is granted. The Clerk of the Court will dismiss plaintiff's complaint for lack of subject matter jurisdiction.

IT IS SO ORDERED.

No costs.

---

5. A formally suspended contractor is ineligible to receive contract awards. ASPR, 32 C.F.R. § 1–603(a) (1976). As the court in *Shermco II* stated, "[T]he Air Force retained discretion to deny a contract to a contractor, despite issuance of a COC by the SBA, if it determined that suspension under ASPR 1–605 was justified...." 584 F.Supp. at 104.

6. In view of the disposition on jurisdictional grounds, it is unnecessary to consider defendant's alternate argument that the complaint is barred by collateral estoppel. Careful review of *Shermco I* and *II*, however, reveals that plaintiff is estopped collaterally to challenge any of the factual findings recited in this opinion that derive from either prior *Shermco* opinions. *See Mother's Resturant, Inc. v. Mama's Pizza, Inc.*, 723 F.2d 1566, 1569–71 (1983).