Thomas PATTON, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 01–161 C.

United States Court of Federal Claims.

March 23, 2005.

Richard D. Heideman, Heideman, Lezell, Nudelman, and Kalik, Washington, D.C., for plaintiff.

Lauren S. Moore, Trial Attorney, Kathryn A. Bleecker, Assistant Director, David M. Cohen, Director, Peter D. Keisler, Assistant Attorney General, United States Department of Justice, Washington, D.C., for defendant. Ted Schwartz, Assistant General Counsel, Department of Justice, Federal Bureau of Investigation, of counsel.

## OPINION AND ORDER

GEORGE W. MILLER, Judge.

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment and Defendant's Motion to Dismiss, or in the Alternative, for Partial Summary Judgment. Oral argument was deemed unnecessary. For the reasons set forth below, Defendant's Motion to Dismiss is GRANTED, and Defendant's Motion for Partial Summary Judgment and Plaintiff's Motion for Partial Summary Judgment are DENIED AS MOOT.

## BACKGROUND [1]

Plaintiff, Thomas Patton, is asserting, *inter alia*, a claim for breach of an alleged implied-in-fact contract between plaintiff and the Federal Bureau of Investigation ("FBI"). According to plaintiff, the FBI promised Mr. Patton that it would pay the rental fee for two storage units in which Patton was storing his personal belongings. The FBI failed to pay the monthly storage fees and Patton's personal property was auctioned to satisfy the arrears. Plaintiff is seeking damages in the amount of $182,000.

On or about June 20, 1989, Mr. Patton, along with other persons, was arrested by the FBI for criminal activities. Compl. ¶ 14. In late December 1989, Mr. Patton met with FBI Special Agents ("SAs") Richard Leahy and Malynda Irby of the FBI's Miami, Florida Division, to discuss the possibility of Mr. Patton's cooperating with the FBI by serving as a witness against those persons arrested with him on June 20, 1989. *See* Compl. ¶ 15.

On March 23, 1990, Mr. Patton signed a Plea Agreement with the United States in the case of *United States v. Sam Frank Urbana, et al.,* Case No. 89–360–Cr–Davis (S.D.Fla.). App. to Def.'s Mot. to Dismiss ("Def.App.") at 9–10, 12. The Plea Agreement provided, *inter alia*, that Mr. Patton freely and voluntarily agreed:

C. To cooperate fully and completely with the United States concerning his knowledge of and participation in all criminal activities, including the activities set forth

---

1. The recitation of facts in this section does not constitute findings by the Court. All of the stated facts are either undisputed or alleged and as-

sumed to be true for the purposes of the pending motions.

in this indictment. Full and complete cooperation specifically means that Thomas Patton will consent to be interviewed and debriefed by attorneys and investigators for the United States who are working on this and other criminal matters as often as the attorneys and investigators may deem necessary and at the times and places convenient to them.

D. To testify truthfully and completely at any debriefing(s), grand jury proceeding(s), trial(s) and other proceedings as the United States may require.

The Plea Agreement further provided:

5. This agreement represents the complete understanding between the United States and Thomas Patton and no other promises or agreements have been made or will be made unless set forth in writing and signed by the parties and counsel.

*Id.*

Later in 1990, the parties entered into a written agreement that required that, in return for Mr. Patton's assisting the FBI in certain criminal investigations, the agency would pay him the sum of $3,000 per month ("1990 Agreement"). Def.App. at 14–19. The 1990 Agreement provided that "[t]his document constitutes the full and complete agreement between Mr. Patton and the FBI. Modifications to this agreement will have no force and effect unless and until such modification is reduced to writing and signed by all parties thereto." Def.App. at 17. There were no written modifications made to the 1990 Agreement regarding payment of storage fees.

In February or March 1991, FBI SAs Leahy and Irby were made aware by Mr. Patton that a storage facility in which Mr. Patton had stored his family's personal property was about to auction off that property as a result of non-payment of storage fees. The storage fees were not incurred in connection with Mr. Patton's work as a cooperative witness for the FBI. Rather, the Pattons had rented space in the storage facility on April 29, 1987, well before Mr. Patton had any relationship with the FBI.App. to Def.'s Partial Mot. to Dismiss and Def.'s Mot. for Summ. J. filed August 29, 2001 ("Def.2001 App.") at 15–17. By February 6, 1991, the account at Self Storage had lapsed for non-payment and accrued an outstanding balance of $2,593.84. Def.2001 App. at 17; Compl. ¶ 23.

Mr. Patton sought SA Leahy's assistance to prevent the imminent loss of the property. In an effort to assist Mr. Patton, SA Leahy negotiated with the manager of the storage facility, who agreed to accept a payment from SA Leahy of $1,000 in lieu of the $2,593.84 amount due in arrears. Def.2001 App. at 18. The parties agree that SA Leahy purchased a lock and secured the contents in the storage bays, though there is a dispute as to why he took such action. Compl. ¶ 27.

According to a March 8, 1991 letter from the storage facility, it agreed to remove the Pattons' two storage units from the auction list in reliance upon SA Leahy's promise to pay the $1,000 to the storage facility before April 8, 1991. Def.2001 App. at 18. The letter also stated that the storage facility agreed to transfer the two units from Mr. Patton to SA Leahy, individually, contingent on an assignment from Mr. Patton and upon payment of $1,000 to the storage facility on or before April 8, 1991. *Id.*

In a written communication from the FBI's Miami Division to the Criminal Informant Unit at FBI Headquarters dated March 22, 1991, SA Leahy stated:

Prior to entering into a plea agreement with the United States and commencing his cooperation with the FBI this witness stored all of his personal property in a self-storage warehouse in Ft. Lauderdale, Florida. This property has been in storage for approximately two and a half years. This witness has been unable to make timely payments for this storage and as a result the storage facility was prepared to auction off all of his personal property to cover its fee. Based on the interceding of Miami, the property was removed from the impending auction. Actual fees owed the storage facility were $2,750.00 however, they will accept $1000.00 as full payment of the debt. Witness [redacted] has requested that $1,000.00 be paid to the Federal Self–Stor-

age to cover this expense. [Redacted] has also indicted a desire to repay this one thousand dollars via anticipated cash advance following completion of his cooperation. Bureau is requested to consider this proposal and provide Miami with its response.

Def.App. at 24. SA Leahy made the payment of $1,000 to Federal Self Storage on April 16, 1991. SA Leahy advised Mr. Patton of the $1,000 payment. SA Leahy made no further payments on the storage facility.

Shortly thereafter, on or about May 28, 1991, the parties entered into a written agreement that required that, in return for Mr. Patton's assisting the FBI in certain criminal investigations, the agency would pay Mr. Patton the sum of $3,000 per month ("1991 Agreement"). Compl. Ex. A. The 1991 Agreement, which did not reference any agreement to pay storage fees, stated:

This document constitutes the full and complete agreement between Mr. Patton and the FBI. Modifications to this agreement will have no force and effect unless and until such modification is reduced to writing and signed by all parties thereto.

Compl. Ex. A ¶ 13.

Prior to the trial in the matter of *United States v. Sam Frank Urbana, et al.,* Case No. 89–360–Cr–Davis (S.D.Fla.), which was originally scheduled for July 29, 1991, the other persons arrested with Mr. Patton on June 20, 1989 pleaded guilty. *See* Def.2001 App. at 36, 73–77. Thereafter, Mr. Patton relocated to the Baltimore, Maryland area and the FBI's Baltimore Division took over the 1991 Agreement. In August 1991, Mr. Patton was closed as a cooperating witness in the Miami Division. Def.App. at 5 (Leahy Decl. ¶ 15).

In a teletype from the Baltimore Division to the Miami Division dated December 8, 1992, Baltimore asked Miami to make arrangements for Mr. Patton, while he was in the Ft. Lauderdale area, to have an opportunity to go through his personal effects that were in storage. Def.App. at 33–35. In a response prepared by SA Leahy, dated December 18, 1992, the Miami Division advised the Baltimore Division that no payment for that storage had been made in approximately

two years and that the owners of the storage facility had placed special locks on both of Mr. Patton's storage compartments. Def. App. at 37–38. Accordingly, before Mr. Patton could gain access to those compartments, the bill would have to be satisfied. *Id.*

On August 5, 1993, FBI contracting officer Jack Cordes terminated the 1991 Agreement by written notice to Mr. Patton. Def.2001 App. at 14. Mr. Patton acknowledged the termination notice by signing it on August 10, 1993. *Id.*

Approximately fifteen months later, on or about November 11, 1994, Mr. Patton entered into another service agreement with the FBI's Los Angeles Division ("1994 Agreement"). Compl. Ex. B. The 1994 Agreement provided that, in return for his services, Mr. Patton would receive $4,000 per month, plus $3,250 for expenses. The 1994 Agreement made no reference to any agreement by the FBI to pay monthly storage fees. As with the 1991 Agreement, the 1994 Agreement stated that the document constituted "the full and complete agreement between Mr. Patton and the FBI." *Id.*

According to plaintiff, he was told by SA Leahy in a telephone conversation on January 3, 1995 that SA Leahy was no longer taking care of Mr. Patton's property in the storage facility and that it would now be the responsibility of the Los Angeles Division. Pl. Mot. for Partial Summ. J. ("Pl.Mot.") at 6. Mr. Patton stated that he relayed this information to his contact in the FBI's Los Angeles Division, SA Michael Wacks, who responded that he would look into the storage situation. *Id.* According to Mr. Patton, he took SA Wacks's response to mean that the FBI was taking care of his belongings. *Id.*

On April 19, 1999, Mr. Patton, through his attorney, submitted a letter to the FBI contracting officer, Jack Cordes, seeking (1) payment in the amount of $150,000.00 pursuant to an alleged 1990 oral agreement, (2) compensation in the amount of $182,000.00 for breach of an alleged implied-in-fact contract pursuant to which the FBI agreed to pay monthly storage fees, and (3) additional payment under the parties' 1994 Agreement. Def.2001 App. at 28–42. Mr. Patton submit-

ted a second letter to Mr. Cordes on July 14, 1999. Def.App. 43–49. On March 22, 2001, Mr. Patton filed his complaint in this court. Count I of the complaint incorporates the claim pursuant to the alleged 1990 oral agreement as well as the claim for the loss of personal possessions from the storage facility, which is based on a separate alleged agreement. Count II of the complaint seeks additional payment under the 1994 Agreement.

By Opinion and Order dated February 12, 2002, plaintiff's claim for $150,000 pursuant to the alleged 1990 oral agreement was dismissed. Both parties now seek summary judgment on the remainder of Count I, *i.e.*, the loss of plaintiff's personal property from the storage units. Alternatively, defendant has moved to dismiss that claim for lack of subject matter jurisdiction because the applicable statute of limitations has expired.

### DISCUSSION

### I. Jurisdiction

Plaintiff is asserting a claim for breach of an implied-in-fact contract. Pl. Mot. at 1. Accordingly, this Court has jurisdiction over plaintiff's claim pursuant to the Tucker Act, which provides that "[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States . . . upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1) (2000). Furthermore, "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501 (2000).

### II. Standard of Review

#### A. Standard for Motion to Dismiss for Lack of Subject Matter Jurisdiction

■ Defendant filed a motion to dismiss for lack of subject matter jurisdiction, pursuant to United States Court of Federal Claims Rule ("RCFC") 12(b)(1), asserting that plaintiff's claim is barred by the applicable statute of limitations. The Court must address the issue of subject matter jurisdiction before any others, *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir.1994), and it must dismiss a complaint "when it lacks the statutory or constitutional power to adjudicate the case." *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir.1996). However, when this court hears such a jurisdictional challenge, "its task is necessarily a limited one." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id.*

■ The court must accept as true the facts alleged in the complaint and must construe such facts in the light most favorable to the pleader. *See Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir.1988); *see also Henke v. United States*, 60 F.3d 795, 797 (Fed.Cir.1995) (stating that courts are obligated "to draw all reasonable inferences in plaintiff's favor"). "If, however, the motion challenges the truth of the jurisdictional facts alleged in the complaint, the court may consider relevant evidence in order to resolve the factual dispute." *McDonald v. United States*, 37 Fed.Cl. 110, 113 (1997) (citing *Rocovich v. United States*, 933 F.2d 991, 993 (Fed.Cir.1991)).

■ Once the court's subject matter jurisdiction is put into question, it is "incumbent upon [the plaintiff] to come forward with evidence establishing the court's jurisdiction. [The plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." *Reynolds*, 846 F.2d at 748; *see also Moyer v. United States*, 190 F.3d 1314, 1318 (Fed.Cir.1999) ("Fact-finding is proper when considering a motion to dismiss where the jurisdictional facts in the complaint . . . are challenged."). The United States Supreme Court has further explained that:

[t]he authority which the statute vests in the court to enforce the limitations of its jurisdiction precludes the idea that jurisdiction may be maintained by mere averment or that the party asserting jurisdiction may be relieved of his burden by any formal procedure. If his allegations of jurisdictional facts are challenged by his

adversary in any appropriate manner, he must support them by competent proof. And where they are not so challenged the court may still insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence.

*McNutt v. Gen. Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936).

## III. The Applicable Statute of Limitations

 The six-year statute of limitations set forth in 28 U.S.C. § 2501, *supra* Part I, "is a jurisdictional requirement attached by Congress as a condition of the government's waiver of sovereign immunity and, as such, must be strictly construed." *Hopland Band of Pomo Indians v. United States,* 855 F.2d 1573, 1576–77 (Fed.Cir.1988); *see also Kirby v. United States,* 201 Ct.Cl. 527, 1973 WL 21341 (1973). Despite being listed in Rule 8(c) as an affirmative defense, in the Court of Federal Claims, where the United States is the only defendant, "the statute of limitations may be raised by the Defendant or *sua sponte* by the Court, and at any time." *S. Cal. Fed. Sav. & Loan Ass'n v. United States,* 52 Fed.Cl. 444, 452 (2002). "Because the statute of limitations affects this court's subject matter jurisdiction—rather than being an affirmative defense—the requirement is strictly construed and under no circumstances may it be waived by the court." *Martinez v. United States,* 48 Fed.Cl. 851, 857 (2001) (citing *Laughlin v. United States,* 22 Cl.Ct. 85, 99 (1990), *aff'd,* 975 F.2d 869 (Fed.Cir.1992)); *see also Alder Terrace Inc. v. United States,* 161 F.3d 1372, 1376–77 (Fed.Cir.1998); *Hart v. United States,* 910 F.2d 815, 817 (Fed.Cir.1990).

## IV. Plaintiff's Claim Accrued More Than Six Years Prior to the Filing of the Complaint

### A. Accrual of a Claim

 In order to prove that his claim is not time-barred, Mr. Patton must show that his claim first accrued within six years of the filing of his complaint. *LaMear v. United States,* 9 Cl.Ct. 562, 569 (1986), *aff'd,* 809 F.2d 789 (Fed.Cir.1986). A claim accrues "when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action." *Kinsey v. United States,* 852 F.2d 556, 557 (Fed.Cir. 1988) (quoting *Oceanic S.S. Co. v. United States,* 165 Ct.Cl. 217, 225, 1964 WL 8621 (1964)). Claims for breach of contract generally accrue at the time of the breach. *Brighton Vill. Assocs. v. United States,* 52 F.3d 1056, 1060 (Fed.Cir.1995). A claim does not accrue, however, "unless the claimant knew or should have known that the claim existed." *Kinsey,* 852 F.2d at 557 n. Alternatively, "[a] claim accrues when 'damages are ascertainable.'" *Shermco Indus., Inc. v. United States,* 6 Cl.Ct. 588, 591 (1984) (quoting *Johnson, Drake & Piper, Inc. v. United States,* 209 Ct.Cl. 313, 329–30, 531 F.2d 1037 (1976)).

 The assumption underlying the "all events" test is that an individual will act with reasonable diligence in the protection of his interests and in so doing, the individual will become aware of acts of another that invade or injure his interests. *Mitchell v. United States,* 10 Cl.Ct. 63, 67 (1986) (citing *Urie v. Thompson,* 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949)). Reasonable diligence requires that "where there is reason to suspect[,] there is reason to inquire and, therefore, '[w]hatever is notice enough to excite attention and put the party on his guard and call for inquiry, is [also] notice of everything to which such inquiry might have led.'" *Id.* at 67–68 (quoting *Wood v. Carpenter,* 101 U.S. 135, 141, 25 L.Ed. 807 (1879) (citation omitted)). A claimant "is charged with notice of whatever facts an inquiry appropriate to the circumstances would have uncovered." *Id.* at 68 (citing *Menominee Tribe of Indians v. United States,* 726 F.2d 718, 721 (Fed.Cir.1984)). Constructive knowledge of a cause of action, rather than actual knowledge, is all that is required to trigger the running of the statute of limitations. *Id.* "Moreover, facts demanding further action are not just those that reveal the existence of a cause of action with certainty. Even rumors or vague charges may demand

pursuit 'if of sufficient substance to arouse suspicion.'" *Id.* (quoting *Tobacco & Allied Stocks, Inc. v. Transamerica Corp.,* 143 F.Supp. 323, 331 (D.Del.1956), *aff'd,* 244 F.2d 902 (3d Cir.1957)). "The existence of a trust relationship does not call for the application of a different rule." *Id.* While the initial inquiry may be higher in such circumstances, "suspicion once aroused may not be ignored." *Id.*

### B. Plaintiff was on Notice of a Potential Breach of the Alleged Agreement To Pay Storage Fees as Early as 1991

■■■ The parties have raised factual disputes regarding several conversations between Mr. Patton and the FBI about the alleged storage agreement. Each party has provided declarations in support of its version of events. *See* App. to Pl. Mot. ("Pl. App.") at 1–2 (P. Patton Aff.); Pl.App. at 3–7 (T. Patton Decl.); Def.App. at 1–7 (Leahy Decl.); Def.App. 46–47 (Wacks Decl.). These disputes are not material, however, because even accepting plaintiff's version of the facts, the 1990, 1991, and 1994 Agreements themselves, as well as the January 3, 1995 telephone conversation between Mr. Patton and Leahy, put him on notice that the Miami Division did not consider itself obliged to make monthly payments on the storage units.

The 1990 Agreement, entered into prior to the March 1991 letter assigning the storage units to SA Leahy, contained a clause providing that all modifications to the agreement must be in writing and signed by all the parties. Def.App. at 17. Mr. Patton was on notice that per the terms of that Agreement, the FBI did not consider itself bound to perform under any alleged "storage agreement." Mr. Patton was again on notice of a potential breach when the parties entered into the 1991 Agreement, mere months after the FBI allegedly promised to pay the monthly rental fees for his storage units. The 1991 Agreement provided that the written agreement was the "full and complete agreement between Mr. Patton and the FBI," Def.App. at 31, yet it made no mention of the alleged storage agreement. Addition-

ally, the 1994 Agreement put Mr. Patton on notice of a potential breach because it likewise contained an integration clause and failed to mention the alleged storage agreement. Compl. Ex. B.

In light of the 1990, 1991, and 1994 Agreements, as well as the statement made to Mr. Patton by SA Leahy in January 1995 explicitly disclaiming responsibility for the storage units, a reasonable person would not have assumed, as did Mr. Patton, that the FBI was paying the monthly storage fees. Mr. Patton was clearly on notice of a potential breach of the FBI's alleged promise to pay the storage fees. Mr. Patton had a legal duty to make a reasonable inquiry—such as by contacting the storage facility to determine if the bills were being paid, asking his wife or daughter to do so, asking the FBI for evidence of the payment of the fees, or obtaining written assurance that the fees were being paid. Mr. Patton failed to do any of these things.

As stated above, a claim for breach of contract generally accrues at the time of the breach. *Brighton Vill. Assocs.,* 52 F.3d at 1060. In all events, a claim accrues when the claimant "knew or should have known that the claim existed," *Kinsey,* 852 F.2d at 557 n., or "when 'damages are ascertainable,'" *Shermco,* 6 Cl.Ct. at 591 (citation omitted). Thus, Mr. Patton's claim accrued as early as May 1991 when he entered into the 1991 Agreement with the FBI. Under the facts as alleged by plaintiff, Mr. Patton's claim accrued in January 1995 at the latest, when SA Leahy informed him that the Miami Division was no longer responsible for the storage units. In any event, plaintiff's complaint, filed March 22, 2001, comes too late. In light of the undisputed facts, plaintiff's claim is barred by the statute of limitations and must be dismissed.

### C. Plaintiff Is Not Entitled To Equitable Tolling

■■■ The United States Supreme Court has emphatically affirmed that courts may not vary the terms of Congress's waiver of the sovereign immunity of the United States:

It goes without saying that statutes of limitations often make it impossible to enforce what were otherwise perfectly valid claims. But that is their very purpose, and they remain as ubiquitous as the statutory rights or other rights to which they are attached or are applicable. We should give them effect in accordance with what we can ascertain the legislative intent to have been.... [If] Congress desires a different result, it may exercise its prerogative to amend the statute so as to effect its legislative will.

*United States v. Kubrick,* 444 U.S. 111, 125, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). Accordingly, equitable considerations dictate that the running of the statute of limitations be suspended only where due diligence would not have prompted discovery, such as where the wrong has been fraudulently or deliberately concealed or where the fact of injury is inherently unknowable. *Mitchell,* 10 Cl.Ct. at 67. The Supreme Court has likewise explained that

[f]ederal courts have typically extended equitable relief only sparingly. We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.

*Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990).

 While the parties disagree regarding certain conversations between the FBI and Mr. Patton about rental payments on the storage units, Mr. Patton has not alleged that the Government acted fraudulently or deliberately concealed the breach of the alleged storage agreement. Furthermore, there is a strong presumption that government officials exercise their duties in good faith. *Am–Pro Protective Agency, Inc. v. United States,* 281 F.3d 1234, 1239 (Fed.Cir. 2002). For 50 years the Federal Circuit has repeated that "we are 'loath to find to the contrary [of good faith], and it takes, and should take, well-nigh irrefragable proof to induce us to do so.'" *Id.* (quoting *Schaefer v. United States,* 224 Ct.Cl. 541, 633 F.2d 945, 949 (1980)). Plaintiff has made no such showing, and thus, the statute of limitations will not be equitably tolled on grounds of fraud or deliberate concealment.

The only other ground for equitable tolling is where the fact of injury is inherently unknowable. As discussed *supra,* Part IV.B, plaintiff could have easily discovered that the FBI was not paying the monthly fee to Federal Self Storage. Far from being unknowable, the fact of the alleged breach could have been easily discovered as early as 1991. Thus, plaintiff's argument for equitable tolling fails.

### CONCLUSION

Defendant's Motion to Dismiss plaintiff's claim regarding the alleged agreement to pay storage fees, set forth in the remaining portion of Count I, is GRANTED. In light of that determination, Defendant's Motion for Partial Summary Judgment and Plaintiff's Motion for Partial Summary Judgment are DENIED AS MOOT. The parties shall contact the Court within ten days to set a status conference to determine the course of further proceedings.

IT IS SO ORDERED.