**Randy Lee HAMMITT and Sandra Marie Hammitt, Plaintiffs,**

**v.**

**The UNITED STATES of America, Defendant.**

**No. 05–454L.**

United States Court of Federal Claims.

Dec. 20, 2005.

Randy and Sandra Hammitt, Plaintiffs, pro se.

William J. Shapiro, Natural Resources Section, Environment and Natural Resources Division, Department of Justice, Sacramento, CA, attorney of record for Defendant. With him on the briefs was Kelly A. Johnson, Acting Assistant Attorney General.

Sarah Leigh Martin, law clerk.

## ORDER/OPINION

BASKIR, Judge.

Plaintiffs, appearing *pro se,* claim a taking of their property without compensation in violation of the Fifth Amendment to the U.S. Constitution. Their claim is based upon the United States forfeiture *in rem* of real property in which Plaintiffs claim an interest. This Court does not have jurisdiction over claims based upon forfeitures *in rem* ordered pursuant to statutory procedures. **We therefore grant the Defendant's Motion to Dismiss the case.**

### Background

On August 9, 1999, Plaintiffs Randy Lee and Sandra Marie Hammitt entered into a 25–year agreement to lease property located at 555 Whitethorn Drive, Gastonia, North Carolina, from Mr. Phillip Mark Vaughan. The Hammitts resided there until approximately September of 2005. On January 11, 2001, Mr. Vaughan was indicted by a grand jury for money laundering and other federal crimes under 18 U.S.C. §§ 371, 1956(h).

The lease agreement gave the Plaintiffs a first option to purchase the property, which they attempted to enforce on March 18, 2002. Mr. Vaughan refused to sell the property to the Hammitts. In response, the Hammitts filed a quiet title action in the Superior Court of Gaston County on April 30, 2003. Mr. Vaughan failed to appear, most likely due to the fact that on May 8, he was convicted of certain racketeering crimes and incarcerated. The Superior Court entered a default judgment against him in the quiet title action on June 3. The Hammitts attempted to enforce the judgment and acquire legal title to the property, but were unsuccessful.

While the Hammitts' quiet title action was pending, on May 30, 2003, the United States filed a complaint for forfeiture *in rem* in the U.S. District Court for the Western District of North Carolina pursuant to the general federal civil forfeiture statutes. *See* 18 U.S.C. §§ 981, 983, 985; 19 U.S.C. §§ 1602–1621; Def. Brief at Tab 2. The complaint was entitled "Complaint for Forfeiture *In Rem,*" with the case name labeled as: *United States of America v. Real Property Located* at 555 Whitethorn Drive, Gastonia, North Carolina, and Other Property Associated with Phillip Mark Vaughan. Def. Brief at Tab 2. It alleged that the subject properties were the proceeds of and/or were used to facilitate Mr. Vaughan's money laundering crimes. The Hammitts received notice of the forfeiture action pursuant to 18 U.S.C. § 983(a). Although it is unclear from the record whether they received personal service of the forfeiture action, the parties agree that at a minimum, notice of the forfeiture was posted on the real property itself, where the Plaintiffs were residing at the time.

The Hammitts filed a "Verified Statement of Interest and Show Cause" on June 20, one day after the 20–day statutory time limit for interested parties to intervene in forfeiture proceedings. *See* § 983(a)(4)(B). They did not file an answer to the complaint. The district court held the Hammitts in default for failing to file a timely answer to the forfeiture complaint. The court also found that the complaint was supported by probable cause, and granted the forfeiture *in rem* on October 26. The court stated of the property: "[A]ll right, title and interest of all persons in the world in or to [the subject property] is hereby forfeited to the United States; and no other right, title or interest shall exist therein." Def. Brief. at Tab 1.

On January 28, 2005, Plaintiff Randy Hammitt filed a "Complaint in Tort" in this Court against Federal employees, including numerous U.S. Marshals. The Complaint was dismissed for lack of subject matter jurisdiction on March 23. *Hammitt v. United States,* 64 Fed.Cl. 547 (2005). On March 11, the district court ordered the Hammitts to vacate the property, and on April 1, U.S. Marshals personally served them with an order requiring them to vacate. The Hammitts did not move off the property at that time. On April 7, they filed their Complaint in this Court, alleging that the forfeiture constituted a taking of their real property without just compensation required by the Fifth Amendment. Among other things, the Complaint challenges the legitimacy of the forfeiture action and the Federal Government's jurisdiction over real property located in North Carolina. On April 12, Plaintiffs moved this Court for a Temporary Restraining Order and Prelimi-

nary Injunction to prevent the Government from evicting them from the property. The Court took no action on the Hammitts' motion.

The Plaintiffs moved on June 15, 2005, to withdraw their request for injunctive relief. In the motion, they changed their legal position, insisting that they will not ask this Court to scrutinize the district court's forfeiture decision. They admitted that the Government acted within its authority in the forfeiture action, but claimed that the forfeiture requires just compensation. In the Joint Preliminary Status Report (JPSR), the Hammitts reiterated their position that they do not challenge the validity of the forfeiture proceeding. However, in their Brief in Opposition to the Defendant's Motion to Dismiss, filed on October 27, the Hammitts once again changed their legal position, alleging that their property was "illegally seized and confiscated" by the United States, depriving them of a property interest "without due process of law." *See* Pl. Brief at 5. In a supplemental filing of December 8, discussed below, the Hammitts again collaterally challenge the district court's forfeiture ruling, claiming that the United States "tortuously interfered with" their property interests. Finally, in an oral argument held by the Court on December 13, the Hammitts stated their official position—that they do not ask this Court to scrutinize the district court's opinion. The significance of these inconsistent positions will be discussed below.

While their action was pending before this Court, the District Court for the Western District of North Carolina held Randy Hammitt in contempt of court on September 21 for failing to move off the property. Mr. Hammitt was assessed $6,100. The Plaintiffs subsequently vacated the property.

On December 8, after briefing on the Defendant's Motion to Dismiss was completed, the Hammitts filed a document entitled "Mandatory Judicial Notice Rule of Evidence 201(d)." In the statement, they allege that as a result of Mr. Vaughan's criminal conviction, his property was subject to an *in personam* forfeiture on May 8, 2003, before the *in rem* forfeiture proceeding had commenced. In support of this claim, they in-

cluded in their filing an affidavit signed by Mr. Vaughan, in which he waived all right, title, and interest in the subject property. As the Defendant pointed out in oral argument, however, this waiver did not constitute a forfeiture of property to the Government, but was merely a promise by Mr. Vaughan that he would not assert an interest in the property in any subsequent forfeiture proceeding.

In their supplemental filing, Plaintiffs argue that their taking claim is based on the alleged *in personam* forfeiture. They also claim that the doctrine of *res judicata* prevented any subsequent action involving "the same claim and person," presumably implying that the subsequent *in rem* forfeiture is invalid. Although the filing was untimely and the Hammitts did not seek the Court's permission to file it, the Court accepted the document without objection from the Defendant.

At the Court's request, the Defendant filed a copy of Mr. Vaughan's criminal conviction on December 14. Two pages of the eight-page document were filed under seal because of their designation as confidential material. The criminal judgment establishes that Mr. Vaughan's conviction did not result in an *in personam* forfeiture of his property, contrary to the Hammitts' claim. The subject property was forfeited by way of an *in rem* civil proceeding, and no evidence in the record contradicts this conclusion.

## Discussion

Before the Court is the Defendant's Motion to Dismiss for lack of subject matter jurisdiction, based on U.S. Court of Federal Claims Rule 12(b)(1). On motions to dismiss, the Court views the facts alleged in the Complaint in the light most favorable to the non-moving party. *See Patton v. United States,* 64 Fed.Cl. 768, 773 (2005). Moreover, the Plaintiffs are appearing *pro se,* thus requiring us to be especially indulgent. *See Forshey v. Principi,* 284 F.3d 1335, 1357–58 (Fed.Cir.2002) (*en banc*). Because the Defendant's motion challenges this Court's jurisdiction, we may also consider outside evidence. *Patton,* 64 Fed.Cl. at 773.

The U.S. Court of Federal Claims is, like all Federal courts, a court of limited jurisdiction. *See Brown v. United States,* 105 F.3d 621, 623 (Fed.Cir.1997). This Court may only hear a claim brought against the United States if Congress specifically and unambiguously waived the government's sovereign immunity for such a suit. *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969). According to the Tucker Act, a suit may be brought in this Court if it is founded upon the Constitution, an Act of Congress, a regulation, or a contract with the United States, if it does not sound in tort. 28 U.S.C. § 1491(a)(1). The Tucker Act does not itself create a substantive right of recovery; a plaintiff must identify a money-mandating provision creating a substantive right and waiving the United States' sovereign immunity in order for this Court to have jurisdiction. *E.g., United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980); *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976).

In their Complaint, the Hammitts allege that the forfeiture *in rem* was a taking in violation of the Fifth Amendment to the U.S. Constitution, which states in relevant part: "nor shall private property be taken for public use, without just compensation." U.S. Const. amend V. The Fifth Amendment qualifies as a money-mandating provision that confers jurisdiction on this Court. *Murray v. United States,* 817 F.2d 1580, 1583 (Fed. Cir.1987).

Nonetheless, the U.S. Court of Federal Claims does not have jurisdiction over the Hammitts' claim. As the U.S. Court of Appeals for the Federal Circuit has clearly stated, this Court does not have jurisdiction over a Fifth Amendment taking claim based on the federal government's *in rem* forfeiture of property when the plaintiff could have participated in the proceedings. *Vereda, Ltda. v. United States,* 271 F.3d 1367, 1376 (Fed.Cir. 2001). In *Vereda,* the court so held for two reasons.

■ First, the Court's Tucker Act jurisdiction is preempted when Congress has enacted a "specific and comprehensive scheme for administrative and judicial review" of the governmental action. *Id.* at 1375 (quoting *St.*

*Vincent's Med. Ctr. v. United States,* 32 F.3d 548, 549–50 (Fed.Cir.1994)). In addition to affording interested parties due process, such a scheme "evinces Congress' intent to preempt any Tucker Act jurisdiction over a money claim that challenges the propriety of an *in rem* administrative forfeiture of property..." *Vereda,* 271 F.3d at 1375. The statutory scheme in *Vereda* gave the plaintiff the ability to challenge directly the *in rem* forfeiture administratively and in district court. *Id.*

■ Second, *Vereda* held that the Court of Federal Claims does not have jurisdiction to review collaterally the decisions of district courts. *Id.* at 1375 (citing *Joshua v. United States,* 17 F.3d 378, 380 (Fed.Cir.2001)). The plaintiff based its complaint "on a challenge to the substantive validity of the forfeiture of its interest in the" property. *Vereda,* 271 F.3d at 1374. Therefore, the plaintiff's taking claim in that case would have required the court to scrutinize the substantive decisions of another tribunal underlying the *in rem* forfeiture, and thus the claim was not cognizable in the Court of Federal Claims. *Id.* at 1375.

■ The facts in the instant case are almost identical to those in *Vereda.* In *Vereda,* the comprehensive scheme that deprived the Court of Federal Claims of jurisdiction consisted of the statutes governing administrative forfeitures by the U.S. Customs Service. *See id.* at 1371; 19 U.S.C. § 1607 *et seq.* The applicable sections required the seizing agency to publish notice of the forfeiture action, and provided that the proceeding be halted and transferred to district court if any person filed a claim of ownership within 20 days of publication. 271 F.3d at 1371. The claimant would then have an opportunity to challenge the merits of the forfeiture action in district court. *Id.*

The forfeiture in this case was governed by the procedures set forth in the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), 18 U.S.C. § 983. *See Vereda,* 271 F.3d at 1371 n. 4 (noting that CAFRA was enacted after the forfeiture at issue in *Vereda* in order to address due process concerns of civil forfeiture proceedings). Similar to the

scheme in *Vereda*, CAFRA requires the government to provide written notice to interested parties, § 983(a)(1)(A)(i), and allows an interested party to intervene in the forfeiture action by filing an answer within 20 days, § 983(a)(4)(B). The claimant may then assert his or her interests in the action, including a potential innocent owner defense. *See* § 983(d). This scheme also provides for adjudication of the government's forfeiture. § 983(c) (the district court must determine by a preponderance of the evidence that the property is subject to forfeiture). Consequently, *Vereda* compels a finding that by enacting CAFRA, Congress intended to preempt this Court's Tucker Act jurisdiction over Plaintiffs' taking claim.

The Plaintiffs rely upon a Federal Circuit case, *Shelden v. United States*, 7 F.3d 1022 (Fed.Cir.1993), upholding a taking claim that resulted from the government's forfeiture action. As the Defendant points out in its brief and *Vereda* recognized, *Shelden* is distinguishable from the Hammitts' situation. *See Vereda*, 271 F.3d at 1376. Simply put, *Shelden* involved an *in personam* forfeiture that automatically accompanied a criminal conviction, whereas *Vereda* involved a forfeiture *in rem* pursuant to a civil proceeding. *Id.* While the former action is intended to punish the property owner for wrongdoing and may incidentally burden an innocent party, the latter is directed against the property itself and allows for innocent owners to assert their rights in the proceedings. *Id.* The *Vereda* court made it clear that the allegedly innocent plaintiffs in *Shelden* could not assert their interests in the *in personam* forfeiture proceedings. Rather, the property was forfeited as part of the criminal defendant's conviction in that case, not as a separate civil action. *Id.* The plaintiffs did not have a comprehensive scheme of administrative and judicial process available to them to protect their rights. *Id.*

The Hammitts challenge a civil forfeiture *in rem*, not a criminal *in personam* forfeiture, so *Vereda*, not *Shelden*, controls. Contrary to their assertions, *see* Pl. Brief at 5, the civil forfeiture proceedings allowed them an opportunity to assert their rights and protect their interest in the property by timely answering the government's complaint. The fact that the Hammitts did not intervene in the forfeiture proceeding in a timely manner is irrelevant. And to the extent that they challenge the district court's refusal to allow them to intervene because of untimeliness, their proper redress is to the district court and the court of appeals, not to this Court. As far as this Court is concerned, the district court's decision was a final disposition of the Hammitts' property interests with which we may not interfere.

At oral argument, the Hammitts clarified that unlike the plaintiff in *Vereda*, they are not asking this Court to scrutinize the district court's forfeiture decision. *Compare* JPSR at 2 (stating that Plaintiffs have no intent to request that this Court scrutinize the action of the district court), *with Vereda*, 271 F.3d at 1374 (noting that the plaintiff challenged the administrative forfeiture on the basis that the property's "guilt" was unsubstantiated). In the JPSR, the Hammitts assigned no defect to the forfeiture but accepted that the government properly asserted its forfeiture power in this case. They claimed that the forfeiture gives rise to a separate and distinct cause of action for a Fifth Amendment taking because it resulted in the taking of their real property. Their argument misunderstands the nature of the government's powers at issue in this case, as well as the district court's forfeiture order.

The federal government's powers of forfeiture and eminent domain are distinct. *Crocker v. United States*, 37 Fed.Cl. 191, 195 (1997). The forfeiture power originates from the government's police power, and forfeitures *in rem* are thought to "punish" property for being connected to illegal activity. *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 686, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974) (describing the history of forfeiture in the United States). In contrast, the power of eminent domain "undertakes to redistribute certain economic losses inflicted by public improvements so that they will fall upon the public rather than wholly upon those who happen to lie in the path of the project." *Atlas Corp. v. United States*, 895 F.2d 745, 756 (Fed.Cir.1990) (citing *United States v. Willow River Power Co.*, 324 U.S.

499, 502, 65 S.Ct. 761, 89 L.Ed. 1101 (1945)). The loss of property in an *in rem* forfeiture is punitive, based on the property's connection with crime and the government's need to eradicate it. It is not the type of consequential loss that should be born by the public as a whole.

The distinction between eminent domain and forfeiture has led this Court to hold numerous times that if the government properly effectuates a forfeiture *in rem*, a compensable Fifth Amendment taking has not occurred. *E.g., Perry v. United States*, 28 Fed.Cl. 82, 85 (1993); *Eversleigh v. United States*, 24 Cl.Ct. 357, 359 (1991). The U.S. Supreme Court has also recognized this principle. *See Bennis v. Michigan*, 516 U.S. 442, 452, 116 S.Ct. 994, 134 L.Ed.2d 68 (1996) ("The government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain."). In other words, an *in rem* forfeiture cannot also be a Fifth Amendment taking.

■ For the same reason, a Fifth Amendment taking claim may not be based upon a lawful forfeiture *in rem*. Therefore, the Hammitts' assertion that the government took their property in violation of the Fifth Amendment is tantamount to a claim that the district court's forfeiture decision was invalid. *Cf. Allustiarte v. United States*, 256 F.3d 1349, 1351–52 (Fed.Cir.2001) (determining whether a taking occurred would require the Court of Federal Claims to scrutinize bankruptcy courts' decisions, despite plaintiff's assurances that the decisions were authorized by law). We do not have jurisdiction to review the decisions of the district courts, such as the decision granting the forfeiture in this case. *See Joshua*, 17 F.3d at 380.

Finally, the district court's forfeiture order clearly states, "[A]ll right, title and interest of all persons in the world in or to [the subject property] is hereby forfeited to the United States; and no other right, title or interest shall exist therein." Def. Brief. at Tab 1. The Court interprets the phrase "all right, title and interest" to include the interests the Hammitts' are asserting in this case. To hold that the Hammitts continue to have interest in the property despite the district court's ruling would contravene that ruling.

## Conclusion

We are mindful of the fact that the Hammitts have suffered a great personal and economic loss by reason of the illegal activity of their landlord, and through no fault of their own. Nonetheless, this Court has no authority to remedy this loss.

In sum, this Court does not have jurisdiction over this taking claim. Our Tucker Act jurisdiction is preempted when Congress has put in place a comprehensive scheme for administrative and judicial review. The Plaintiffs' Complaint would require us to scrutinize the district court's decision to determine whether the government properly exercised its forfeiture power.

**For the foregoing reasons, the Defendant's Motion to Dismiss is GRANTED, and the case is DISMISSED for lack of subject matter jurisdiction.**

**IT IS SO ORDERED.**